UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

_____

UNITED STATES OF AMERICA,          )
                                   )     CASE NO. 4:21-cr-54
          Plaintiff,               )
                                   )
     vs.                           )     TRANSCRIPT OF FINAL PRETRIAL
                                   )     CONFERENCE PROCEEDINGS
                                   )
JEFFREY ALLAN KOCK,                )
                                   )
          Defendant.               )

_____

                              COURTROOM 160, FIRST FLOOR
                              U.S. COURTHOUSE
                              123 East Walnut Street
                              Des Moines, Iowa 50309
                              Friday, September 24, 2021
                              8:31 a.m.

BEFORE:  THE HONORABLE REBECCA GOODGAME EBINGER, DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:            ANDREW KAHL
                              DEBRA SCORPINITI
                              United States Attorney's Office
                              U.S. Courthouse Annex
                              110 East Court Avenue, Suite 286
                              Des Moines, IA 50309


For the Defendant:            JEFFREY ALLAN KOCK, PRO SE




                    Chelsey Wheeler, CSR, RPR, FCRR
                      United States Courthouse
                      123 East Walnut Street
                        Des Moines, IA 50309

P R O C E E D I N G S

(In open court with the defendant present.)

THE COURT:  Thank you.  Please be seated.

Mr. Kock, do you have a mask with you?

THE DEFENDANT:  No, I don't.  I can't breathe with one.

THE COURT:  Do you have medical documentation of that, sir?

THE DEFENDANT:  I have an inhaler in my pocket.  I can't breathe.  I don't consent to a mask, and there's 6 feet around me.

THE COURT:  Okay.  You need to sit down.

THE DEFENDANT:  I've got a cramp in my leg.  Give me a couple minutes.  It's killing me.

THE COURT:  Okay.  So this isn't going to go well.  You're going to have to comply with the Court's instructions unless there are medical reasons for you not to, and you're going to need to have documentation of those medical reasons.

THE DEFENDANT:  Isn't that a HIPAA violation?

THE COURT:  No, sir.  I am a United States District Judge, and I am asking you to provide me with medical information for you to have the accommodation that you're requesting.

THE DEFENDANT:  Okay.

THE COURT:  And I am asking for that so I can

accommodate whatever medical need you have.  You're going to hear that I am going to require everyone in the courtroom, other than witnesses while testifying or jurors when answering questions, to wear a mask during the course of trial.  And you're going to have to comply with all of my instructions during trial, whether that's sitting or standing or being quiet or answering questions.

THE DEFENDANT:  Okay.  So you're mandating mask wearing in the trial and everything?  It's a mandate; is that correct?

THE COURT:  I am going to, by order of the Court, for the safety of all of those involved, consistent with the administrative order in effect in this district, require everyone to wear masks that are in the courtroom, just as I am in the current jury trial that's going on on the second floor and that happened last week in this courtroom.

THE DEFENDANT:  Judge, I see problems with that.

Have you ever played poker before?

THE COURT:  Sir, you need to sit down.

THE DEFENDANT:  It's almost gone.  I'm going to jump up out of my seat in about another minute.  It's almost gone.  It really is.

THE COURT: Well, we're not going to proceed until you can comply with my instructions, so you need to sit.

THE DEFENDANT: Okay. All right. Give me a couple seconds. It's going to cramp up again if I sit. It's been doing it all morning.

THE COURT: You're not speaking until you're seated.

THE DEFENDANT: Is that an order?

THE COURT: Yes, sir.

THE DEFENDANT: Okay. Well, is an order a law? Just questions. I don't mean it to be a dishonor or anything. I'm just asking a question.

THE COURT: So I am the district judge presiding in this case. My instructions are consistent with my obligations to have matters proceed in an orderly way, both under the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, and the inherent authority of the Court.

So when I instruct you to do something and you do not do that, that would be a violation -- so long as it's a lawful instruction, that would be a violation of the Court's order, which could cause you to be held in contempt of court --

THE DEFENDANT: Okay.

THE COURT: -- and that comes with the potential of penalties, including imprisonment.

THE DEFENDANT: Okay. So is that a direct contempt, then, or criminal or civil contempt? I'm confused.

THE COURT:  If you do something in my presence and I see it, then you can be -- that is immediately -- you can be held in a civil contempt.  The U.S. Attorney's Office can choose whether or not to prosecute you for criminal contempt, which would be prosecuted in front of a different judge.

THE DEFENDANT:  Yeah.  It would have to be a whole 'nother trial, wouldn't it?

THE COURT:  Yes, sir.  But the civil matter would not be.

THE DEFENDANT:  Civil involves a contract; correct?

THE COURT:  No, sir.

THE DEFENDANT:  How does it not?

THE COURT:  Okay.  We're going to start over.

We're here in the matter of the United States of America versus Jeffrey Allan Kock.  This is Case No. 4:21-cr-54.  This is the time and date set for a final pretrial conference in this matter.  The parties are present, as is the -- counsel for the Government is present as is the defendant, who has elected to proceed pro se.

The Court has an hour and a half dedicated to this hearing this morning, and the issues that we're going to discuss are issues related to the orderly presentation at trial in front of a jury next week.

We will proceed in addressing all of the issues in regards to trial, and then there will be the opportunity for

the attorneys for the Government and the defendant to inquire at the appropriate time any questions about how the matter will proceed.

First off, in regards to the COVID issues present, at this point there is a positivity rate across the state of Iowa of over 9 percent.  Only 65 percent of adults are fully vaccinated.  Consistent with the administrative order in effect in this case giving the presiding judge the authority to require mask wearing or other restrictions in order to preserve the safety of individuals participating in trial, the Court will require masks for all in court except for witnesses while testifying and jurors when speaking during voir dire.

If there is a medical accommodation requested by either a juror or the defendant, I will be happy to provide you with a face shield.

Mr. Kock --

THE DEFENDANT:  Kock.

THE COURT:  Mr. Kock --

THE DEFENDANT:  Thank you.

THE COURT:  -- I have face shields available, and I would be happy to provide one to you.

Would you like a face shield, sir?

THE DEFENDANT:  Today?

THE COURT:  Yes, sir.

THE DEFENDANT:  I prefer to breathe.  I prefer to

exercise my God-given right to breathe.

THE COURT:  So you've indicated that a mask is inhibiting to you.

THE DEFENDANT:  Uh-huh.

THE COURT:  We have face shields available that will not press against your nose or mouth in any way.

THE DEFENDANT:  I'm still claustrophobic.  I don't consent to that.

THE COURT:  Well, are you indicating that you believe you cannot, consistent with your --

THE DEFENDANT:  Right.  Yeah.  I don't wear a mask anywhere.  I don't believe in it.  Mr. Eklov has been to my house several times.  He's never seen me in a mask, I believe. I've seen him in a mask.  I actually saw his face the other day.  I couldn't believe it.

THE COURT:  Okay.  You're going to have to speak more slowly.

THE DEFENDANT:  That's just me.  That's what I do.

THE COURT:  Are you vaccinated, sir?

THE DEFENDANT:  I will not get a vaccine ever.

THE COURT:  Okay.  So right now --

THE DEFENDANT:  Over my dead body.

THE COURT:  So right now the administrative order in effect in this court by the chief judge of this district is that if you are vaccinated, you do not have to wear a mask

unless specifically ordered by a judge to do so, and if you are not vaccinated, then you are required to wear a mask in this courthouse for the safety of all involved.

THE DEFENDANT:  So that's a mandate?  You're mandating masks?  Is that correct?

THE COURT:  It is an order of the Court.

THE DEFENDANT:  Okay.  But --

THE COURT:  And I'm happy to give you a copy of that.

THE DEFENDANT:  I would love to see a copy of that, but is that order an actual law on the books?  Like, is it a law?  That's what I want to know.  I'm just asking questions just because I can.

THE COURT:  So it is an order of the Court which must be followed by all people who are in the courthouse.

THE DEFENDANT:  But you won't say it's a law?

THE COURT:  It is an order of the Court.  A law is an enactment from Congress that goes through both houses --

THE DEFENDANT:  Right.

THE COURT:  -- and is then presented to the President for signature.

THE DEFENDANT:  Which the order did not.

THE COURT:  No.  It is an order of the Court which must be followed --

THE DEFENDANT:  Must --

THE COURT:  -- in accordance with the law.

THE DEFENDANT:  I still don't consent to it.  I'm sorry.  I don't.  I don't consent to it.

THE COURT:  One moment.

Mr. Kahl, what is your position on the defendant's refusal to wear a mask?

MR. KAHL:  The Government believes that Defendant should be wearing a mask or a face shield consistent with the order of the Court.

THE COURT:  So this will make this hearing very short, and this is going to be something that happens throughout the course of trial.  You can either wear a mask or a face shield or you can produce medical documentation from a medical professional that states that you cannot wear a mask and some other accommodation is required.  Those are your choices right now.

THE DEFENDANT:  Okay.  So isn't this practicing medicine without a license --

THE COURT:  No, sir.

THE DEFENDANT:  -- these orders?  How is it not?  I don't understand.

THE COURT:  I'm sorry you don't understand, but that is the order of the Court.

THE DEFENDANT:  Huh.

THE COURT:  I will allow my assistant to bring forward a face shield to you for your use at this time.

THE DEFENDANT:  I'm not going to say thanks, but, you know...

You can't even see through this thing.

THE COURT:  Sir, I can give you a different one.  I have multiple versions.

THE DEFENDANT:  Do you have any that you can see through it?  I had eye surgeries this year.  I have trouble seeing.  I don't want any of my senses impaired, and I believe they're already being impaired.

THE COURT:  I will provide you with one at the time -- at the time of trial, I will provide you with one that has a visor on it, and we'll get that for you right now.

THE DEFENDANT:  How about everybody wear one of those. Judge, have you ever seen -- have you ever been to a poker game?

THE COURT:  We're not going to discuss this.

THE DEFENDANT:  I believe we should.  I think it's a valid point.  My life is at stake here.

THE COURT:  I appreciate your comments.

Oh, there's a film on it.  You have to remove the film, and that will allow you to see through it.  It's just protecting it.

THE DEFENDANT:  I don't have any fingernails.  I bite them off.

THE COURT:  One moment.

You can go ahead and remove the film.

THE DEFENDANT:  I got it.  You don't have to come back over here.  I don't mean to be difficult or anything.  I ask a lot of questions.

THE COURT:  You're going to have to wait until the appropriate time to ask questions.  And something you're going to have to understand if you are going to proceed pro se -- if you're going to proceed pro se, meaning you're representing yourself, is, like all attorneys, you must comply with the instructions of the Court.  There is not a debate about my instructions being an active law or not.  They are orders of the Court, and you must comply with them.

Do you understand that, Mr. Kock?

THE DEFENDANT:  I'm not sure I understand.  I think I understand it's agreed.  I still don't understand, but we can proceed.

THE COURT:  You understand that you must comply with my instructions?

THE DEFENDANT:  I don't know if I understand that or not.

THE COURT:  Well, if you fail to comply with my instructions, there are ramifications or consequences.  Some of them could be that you're held in contempt of court, as we just discussed.  Some of them can be that you are required to have counsel because you have made it impossible to have a trial

with yourself -- representing yourself.  Other consequences can include being removed from the trial and tried in absentia, so you must comply with my instructions.

Do you understand?

THE DEFENDANT:  I comprehend.

THE COURT:  Okay.  Thank you.

All right.  So, Mr. Kahl, understanding the defendant has expressed reservations about the use and requirement of masks during the course of trial, does the Government have any similar reservations?

MR. KAHL:  We do not.

THE COURT:  And do you ask the Court proceed in that manner?

MR. KAHL:  Yes.

THE COURT:  Okay.  All right.  So the first thing I'll talk to you about is jury selection.  You should have been provided this morning or are going to be provided this morning with redacted copies of the list of potential jurors in this trial.  The material you received is everything that you would typically receive but for any names listed in the questionnaires.  For each juror, initials are listed, and their city is listed, and there is no specific address listed.

Under the local rules of this court, in a typical criminal case where counsel is involved, only counsel is allowed to look at and have access to the juror questionnaires.

That's in the jury plan for this district.  That was enacted most recently on July 7 of 2020.  Records of petit jurors are provided to lead counsel of record in each case approximately three days prior to trial unless otherwise ordered by the Court.  The questionnaires shall be viewed only by counsel and shall be destroyed within 10 days of the trial's conclusion.

Because Mr. Kock is proceeding pro se and there is no lead counsel to provide, I have redacted this information at this time -- three days prior to trial -- and am giving you hard copies of the information about the potential jurors.

On the morning of trial, you will receive hard copy lists of the full name and address of the jurors for your use during the course of the jury selection process.  At the conclusion of jury selection, you will be required -- both parties will be required to return to the Court those unredacted versions of the jury information, and you can maintain the redacted versions through the end of trial and destroy them at the conclusion of trial.

This is not a capital case.  There is no statute that I am aware of that requires any particular timing of the disclosure of information as to the jurors, and the Court believes that these steps are reasonable and do not impose a burden on anyone's rights to have jury selection comport with the Constitution and the applicable statutes.

I understand that there was some confusion as to what

the Court's intent was as to the use of information about the jurors.  Does the method by which the Court intends to proceed -- is the method by which the Court intends to proceed objected to by the Government?

MR. KAHL:  No.  By getting the names the morning of trial, that resolves our concern.

THE COURT:  Thank you.

From the defense?

THE DEFENDANT:  I'm not sure I understand.

THE COURT:  So you're going to participate in the selection of jurors --

THE DEFENDANT:  Okay.

THE COURT:  -- on Monday.

THE DEFENDANT:  Okay.

THE COURT:  To help you prepare for that, you are being provided with the names and some biographical information about the jurors.

THE DEFENDANT:  Okay.

THE COURT:  Under the local rules, Local Rule 47 in particular, no one is allowed to contact jurors without leave of Court.  To prevent any concerns about that, the information from which these jurors could be contacted has been removed, and the -- but to make sure that there isn't a juror that you know, somebody that you went to high school with or someone that Mr. Kahl knows, on the panel, on the morning of trial, you

will get the full name and address of those individuals so you can have that additional information.  That material will be returned to the Court, and all of this material will be destroyed.

Do you understand that?

THE DEFENDANT:  I believe so.

THE COURT:  Okay.  And do you have any objection to that?

THE DEFENDANT:  As long as I have as equal choice as he does.

THE COURT:  Yes.  So at this time Ms. Sands will be bringing to you the redacted versions of the venire pool.  And, again, the only things redacted from it are the names -- any names listed and the exact address.

The Court has adopted a practice, after talking to jurors after trial, of referring to jurors by number during the course of trial.  We will, of course, ensure that each juror is appropriately identified by the right number.

You'll note that at the top right-hand corner of each of the jury pages, there is a number associated with that.  That number is the venire number that will stay with this juror throughout the course of the jury selection process.  It will be the same number on this list as on the strike list regardless of whether someone shows up or doesn't show up so that there's no confusion.

The record is clearer with the numbers, jurors prefer it, and that is the way that the Court intends to proceed.

Any objection to that from the Government?

MR. KAHL:  No, Your Honor.

THE COURT:  From the defense?

THE DEFENDANT:  I don't think so.

THE COURT:  Okay.  So we are -- you'll receive a map, if you have not already received a map, that shows you where everyone will be seated, and they will be identified by the number of the seat where they will be seated.  There will be 32 people.  The numbers 1 through 32 will be seated in the well.  The jurors identified by letter will be in the gallery. To the extent that any of them are needed, we will add them, and they will then be identified by number after they are needed.

Jury selection will commence with -- I will have a voir dire with the jury, meaning I will ask them questions about their suitability to serve on the jury.  I will need from the Government and the defense anyone -- other than those listed on the Government's witnesses list any names that will come up during the trial that any juror knowing them would potentially be a problem.  So the defense and the -- you can provide those to me on the morning of trial.  You can consult with each other about that.

After I finish my discussion with the jury, each side

will have 20 minutes to ask questions of the jury as to their fitness to serve.  This is not argument.  This is not evidence. This is only an inquiry about the jurors' ability to understand the law, apply the law, and their fitness to serve as jurors in this trial.

It is my intent to use two alternates.

Does the Government believe that will be sufficient?

MR. KAHL:  I think so, yes.

THE COURT:  Mr. Kock, any reason to have more than two alternates?

THE DEFENDANT:  I don't think so.

THE COURT:  After the parties have concluded -- the Government will go first with 20 minutes of questioning.  The defense will have 20 minutes of questioning.  As I said, the jurors will be asked to remove their masks as they answer questions during the course of voir dire, and we'll be referring to jurors by number, not names.

The strikes will be exercised with the Government exercising one and the defense exercising two until the six strikes allowed for under the rules for the Government and the ten strikes allowed for by the defense are exhausted.

Any questions for the Court about jury selection?

MR. KAHL:  We submitted some proposed voir dire questions, and some of them relate to attitudes towards taxation and experiences with the Internal Revenue Service.

Oftentimes those questions provide a significant amount of discussion.  They generally are of interest to both sides.

We would encourage the Court to maybe include that in the Court's general voir dire so we don't get bogged down in the 20-minute piece.

THE COURT:  No.  I will review your voir dire.  I will ask case-specific general inquiries about any biases that exist, and I will review your proposed voir dire and ask appropriate questions consistent with that.

MR. KAHL:  Thank you, Your Honor.

THE COURT:  Any questions about jury selection?

THE DEFENDANT:  What does "voir dire" mean?

THE COURT:  "Voir dire" is the word for jury selection.  I apologize.

THE DEFENDANT:  No.  That's okay.  Thank you.

THE COURT:  Any questions about jury selection?

THE DEFENDANT:  I don't think so.

THE COURT:  Okay.  I am currently in a trial that may or may not be concluded on Monday.  If the trial is not concluded, we will delay jury selection -- I mean, I'll still have the jurors here, and we'll delay jury selection until later in the day.  I can't imagine the trial will go further than that.

We may use a different room for jury selection, if necessary, if the other courtroom is still being used.  So we

will keep you posted about that in terms of our location.

You will still be required to be here at 8:30 on Monday morning.  I would suggest we meet in this courtroom.  Plan on meeting in this courtroom unless otherwise instructed on Monday morning, and then we'll let you know where things stand in terms of our location.

I am a United States District Judge.  I have the authority to select a jury and to preside over all criminal matters.  There are magistrate judges in this courthouse.  To the extent that I am still in trial, with the consent of the parties, I can have a magistrate judge select the jury if the parties consent to that.

I don't know that that will be necessary.  It is, generally speaking, my preference to pick my own juries, but should there be a scheduling conflict, would the Government consent to a magistrate judge selecting the jury?

MR. KAHL:  We would, Your Honor.

THE COURT:  Mr. Kock, should there be a conflict, would the defense consent to a magistrate judge selecting the jury?

THE DEFENDANT:  No.  I like you better.

THE COURT:  Okay.  We will attend to the scheduling conflicts as needed.

All right.  As I just stated, we will have a regular schedule of trial, 8:30 in the morning with the parties

present.  We'll ask the jury to arrive between 8:30 and 8:45. We'll start with the jury between 8:45 and 9:00 each day.

At this time, Mr. Kahl, how long do you think it will take to present the Government's case in chief, assuming reasonable cross-examination?

MR. KAHL:  We were estimating three days.  My thought was, on the original schedule, we could probably wrap up by Wednesday.  I still think if we get a jury picked sometime on Monday, that's realistic.  I suppose there's a chance things could be into Thursday.

We have a number of witnesses traveling from out of state and a number of civilian witnesses.  To the extent we're going to need to slide the schedule around, we would ask for some flexibility in the order of witnesses just based on when they're going to -- are scheduled to be here.

THE COURT:  Yes.

Mr. Kock, you have not provided the Court with any proposed exhibits or proposed witness list.  Do I understand from that that you are not intending to present any evidence?

THE DEFENDANT:  Well, I have a couple affidavits here today that I wanted to present.

THE COURT:  So I'm asking about admissible evidence at trial.  Do you have any witnesses that you are intending to call or exhibits that you are intending to offer as evidence during the course of trial relevant to the allegations against

you?

THE DEFENDANT:  Well, I don't believe so.  I think my only intent is to face my accuser really.

THE COURT:  Okay.  That's fine.  You also have the right to testify.

Is it your intent at this time -- and you also have the right to remain silent.

THE DEFENDANT:  Sure.

THE COURT:  So at this time, do you know whether or not you intend to testify in your own defense?

THE DEFENDANT:  I don't think I need to.  I just require to face my accuser as a man in this court, honestly.

THE COURT:  So that means that the Government's case in chief will be the only evidence admitted.

Thank you for that.

And, again, if there is -- if there are challenges associated with scheduling, we will keep the parties apprised.

Mr. Kock, I would like for you to ensure that you give my courtroom deputy after this hearing the best email and cell phone number to reach you in case there are any unforeseen changes in schedule.

Similarly, the Government -- I have the Government's email addresses, but cell phone numbers so we can reach you in case there are scheduling issues.

THE DEFENDANT:  I have a question on what just

happened.  I do have two affidavits that I want to enter.  I don't think I understood, like, what you were saying, but I do have two affidavits here that I would like to --

THE COURT:  So this is not an evidentiary hearing.

THE DEFENDANT:  Okay.

THE COURT:  We are talking about trial.

THE DEFENDANT:  Right.

THE COURT:  If you have evidence you wish to submit at trial that complies with the rules of evidence, you can bring it to my attention at the end of this hearing --

THE DEFENDANT:  Okay.

THE COURT:  -- we'll show the Government, and then we'll decide whether or not those are pieces of evidence that may be admitted at trial.

THE DEFENDANT:  Okay.

THE COURT:  If they are not able to be admitted at trial, they can be preserved for the record so that the Court of Appeals can determine whether or not I erred in not admitting them.

THE DEFENDANT:  Okay.  So you won't hear these today, then, what I have?

THE COURT:  No.  We're going to finish the hearing.  It's not an evidentiary hearing.  This is a final pretrial conference.  At the conclusion of the hearing, if you believe those affidavits are something that you want to admit at trial,

we'll address that at the conclusion of the hearing.

THE DEFENDANT:  I see.  Okay.

THE COURT:  All right.  Trial staffing.  I see Ms. Scorpiniti is seated with you, and she's filed an appearance, so are the two of you trying this case, Mr. Kahl?

MR. KAHL:  Yes, Your Honor.

THE COURT:  And your case agent?

MR. KAHL:  Todd Eklov.

THE COURT:  And I see Ms. Thomas in the back of the courtroom.  Will Dawn Thomas be the paralegal in this case?

MR. KAHL:  Yes.

THE COURT:  Anyone else that the Government intends to be on the trial team?

MR. KAHL:  No.  I mean, our victim-witness person will be in and out of the courtroom, but nobody else seated with us.

THE COURT:  Okay.  Mr. Kock, you have repeatedly asserted that you wish to proceed pro se representing yourself. I have talked with you and Judge Adams has talked to you and Judge Locher has talked to you about the challenges associated with that.

At this time it is still your intent to represent yourself?

THE DEFENDANT:  Honestly, I don't think I can represent myself.  I'm just going to present myself.  You know, I don't want an attorney speaking for me or brokering deals

behind my back, no.

THE COURT:  So you have declined the assistance of counsel; correct?

THE DEFENDANT:  Yes.

THE COURT:  And you are doing that knowingly and voluntarily because you want to be the person speaking for yourself in court?

THE DEFENDANT:  Yeah, I do.  Yeah.

THE COURT:  Okay.  Any additional record in that regard from the Government?

MR. KAHL:  No.  Thank you, Your Honor.

THE COURT:  During the trial at the appropriate time, I'll ask the Government to read the indictment to provide the jury with notice of the charges pending against the defendant.

When the indictment is read, no Code sections should be stated.  It should just be stated "alleged in violation of federal law."  And it's a lengthy indictment.  You'll read that as it's written.

And the question I had was in terms of the notice of forfeiture.  Because the items listed, the three Mercedes-Benzes, have otherwise been dealt with, my understanding is there is no need to submit forfeiture to the jury.

Is that correct, Mr. Kahl?

MR. KAHL:  That is correct, Your Honor.

THE COURT:  You will not read the notice of forfeiture when you're reading the indictment.

MR. KAHL:  Right.

THE COURT:  And you will indicate to the jury that the defendant has pled not guilty to all of those charges.  If you do not, then I will, but you should indicate that.

MR. KAHL:  Okay.

THE COURT:  Thank you.

We'll have a 30-minute lunch each day.  I am going to allow the jurors to leave, if they want to, but I am going to encourage them to bring their lunch so that they reduce their risk of interacting with individuals and otherwise going out and about in a way that could present COVID concerns.

We'll begin at 8:30 each day; we'll end between 4:30 and 5, depending on how witnesses go; and we'll have 30 minutes for lunch and two 10- to 15-minute recesses during the course of the day.

During trial, you will be expected to either stay at the podium when questioning witnesses or stay at your counsel table while questioning witnesses.  You will not be permitted to wander about the court.

And, again, you will be expected to -- I notice you've taken off your face shield, sir -- but you will be expected to have a face shield or mask on throughout the course of trial consistent with the Court's order.

You will be required to either sit at counsel table or stand at the podium when you are speaking to the Court or to the jury.  The local rule requires you to rise when speaking. Because of the difficulty with microphones and masks, I may allow you to sit if you choose, or I may instruct you to sit if we can't otherwise hear you.

Any questions about the Court's expectations?

MR. KAHL:  No, Your Honor.

THE COURT:  Mr. Kock?

THE DEFENDANT:  I don't think so.

THE COURT:  All right.  When witnesses are on the stand, if there is a reason to approach, meaning there is a document or an exhibit or something you need to give them, you can ask to do so.

To minimize movement in the well and to keep everyone safe, you will not be permitted to go up to a witness if it's not for a reason.  So you can ask, and I will either grant or deny that ability to approach.

If you do ask and I do give you permission for some reason, then you must remove yourself from the witness as soon as possible and not linger at the witness stand.

In terms of witnesses, you indicated, Mr. Kahl, that the -- the amended witness list I have, is that correct in terms, at least at this time, of the order in which you intend to call people?

MR. KAHL:  The second amended witness list is what we are working with.  We had one switch of a witness because of COVID exposure.  That is the order we would hope to proceed in.

As indicated, we have some out-of-state folks coming who will be traveling on Monday and Tuesday, and we may ask to take them out of order, but this is what we expect to do.

And I also, in that regard, wanted to mention that we would ask the Court permission to recall Special Agent Eklov a second time in order to provide for the most logical presentation of evidence.

THE COURT:  Yes, consistent with the rules of evidence and the need to have the evidence presented in a coherent way, the Court will allow that.

And we'll also -- just keep us informed.  If there is some travel or other issue, let us know so that Mr. Kock can know who to be preparing for and the Court can understand what to expect as well.  So I would ask you at the beginning of each break, or you can tell us if there's going to be some change to this order.

MR. KAHL:  Absolutely, Your Honor.

THE COURT:  When addressing any witness, they should be addressed by surname:  Mr. Smith, Ms. Smith, and that's true for any person in the courtroom.

Any issues in regards to competency of any potential witnesses or criminal convictions contested for impeachment

purposes?

MR. KAHL: There is one witness who we are going to remove from the witness list. We had issued a subpoena to Susan Kock, who is the defendant's mother. We have received medical documentation through her power of attorney indicating that she is not in good health, that she is suffering from dementia. We will not be calling her as a witness.

THE COURT: Okay. Otherwise, any other competency issues that you're aware of?

MR. KAHL: No, Your Honor.

THE COURT: How about criminal convictions that you intend to use or you believe will be appropriately used for impeachment of any of these witnesses?

MR. KAHL: None, Your Honor.

THE COURT: Do you wish to have a standard sequestration order in effect?

MR. KAHL: Yes, Your Honor. And my understanding is the witnesses would be allowed to come into court to watch the trial after they have testified?

THE COURT: And if they do, they cannot be recalled as a witness, meaning other than the case agent who is seated at counsel table, if a witness testifies and then stays in the courtroom, you can't later call them as a rebuttal witness.

MR. KAHL: Understood, Your Honor.

THE COURT: Mr. Kock, do you understand that the Court

is going to issue an order that requires all witnesses not to listen to the testimony of any other witnesses until after they testify?

THE DEFENDANT:  Okay.

THE COURT:  Is that acceptable to the defense?

THE DEFENDANT:  I believe so.

THE COURT:  And that order will be in effect.

Any questions about witnesses from the Government?

MR. KAHL:  No, Your Honor.

THE COURT:  From the defense?

THE DEFENDANT:  Did I hear him right he's going to eliminate people that have criminal convictions?

THE COURT:  No.

THE DEFENDANT:  Okay.

THE COURT:  There is a rule of evidence that allows criminal convictions to be used for impeachment purposes to challenge someone's reliability as a witness.

THE DEFENDANT:  Uh-huh.

THE COURT:  And there are certain standards that have to be applied in that regard.

THE DEFENDANT:  Oh.  Yeah.

THE COURT:  I was asking the Government if there was anyone they knew of that had those types of issues so that I could address it before trial.  They've indicated there are none.

THE DEFENDANT:  I was just curious.  I don't relate to those people anyway, but...

THE COURT:  Thank you.

Okay.  Exhibits.  I have received a courtesy copy of the Government's exhibits.  I know that you have, I believe, provided us the electronic form of those exhibits as well.

To the extent -- are you anticipating any physical exhibits?

MR. KAHL:  We have physical copies of them for use in court and for use by the jury.  We do have included in the exhibits an original tax return, a couple of original Treasury checks that we would be offering into evidence, but I think we also have copies of those scanned in.

THE COURT:  Okay.  So when we are using -- if you have an original item, that original item will go back with the jury.  When we are using exhibits, I would ask that you use, to the extent you can, the electronic exhibits to, again, eliminate movement throughout the courtroom.

We will provide the jury -- we have an electronic jury system so that the jury can -- the jury has a computer that has only the evidence on it, so they can scroll through it when they go back to deliberate.  Typically, we give the jury a binder of the exhibits, and they have that so that they can, basically, sing from the same hymnal; somebody can be looking at the paper, and somebody can be looking at the electronic

form.  Those exhibits obviously all have to match, and it's imperative that the parties ensure that with my staff.

Any objection to proceeding in that way?

MR. KAHL:  No, Your Honor.

THE COURT:  Mr. Kock?

THE DEFENDANT:  Nope.

THE COURT:  Any stipulations that you imagine admitting in front of the jury?

MR. KAHL:  No, Your Honor.

THE COURT:  All right.  In terms of the manner of presentation, if there is an evidentiary objection to a question or an item of evidence, the parties are expected to object to the question or the item of evidence citing a rule of evidence by name or by number.

It is not the opportunity to comment on the evidence. It is the opportunity to bring to the Court's attention potential legal grounds for the evidence or the question not to be admitted.  It is not argument.  It is preservation of the record in regards to whether or not the evidence should be admitted.

If there is further record that is needed, we will have that record outside the presence of the jury at the next available break.

Does the Government understand the Court's instructions?

MR. KAHL:  Yes, Your Honor.

THE COURT:  Does the defense?

THE DEFENDANT:  Just a question.  So if I hear somebody say something I know is not true, I can say, "Objection, hearsay," or I can't?

THE COURT:  So if you think something is untrue, that is not objectionable.  That is something that you can ask them about on cross-examination.

THE DEFENDANT:  Okay.

THE COURT:  If it is hearsay, it is an out-of-court statement offered for the truth of the matter asserted, meaning they said it someplace else -- someone said something someplace else and now someone on the witness stand is saying, "Susie said that she wasn't going to pay taxes."  That is hearsay, and you could object to that.

But you can't simply say, "Objection, false testimony."  That would be an improper objection.  If you hear something that you think is not true, then your opportunity to challenge that is when you have the opportunity to ask that witness questions on cross-examination.

THE DEFENDANT:  Okay.

THE COURT:  Do you understand that?

THE DEFENDANT:  I gotcha.  Yeah.

THE COURT:  We have prepared preliminary instructions. Did you hand those out?

COURTROOM DEPUTY:  Yes.

THE COURT:  We have prepared preliminary instructions consistent with the proposed instructions.  I understand that the defendant was consulted on these instructions but did not participate.

Is that accurate, Mr. Kock?

THE DEFENDANT:  On the jury --

THE COURT:  Instructions.

THE DEFENDANT:  Yeah.  No.  I didn't, no.

THE COURT:  So I have prepared a draft of the instructions, preliminary instructions, that include the standard opening instructions to a jury in considering a criminal case, including the elements of the offense and their instructions in terms of how the manner should be -- how the case should be tried.

You can have the opportunity to review those preliminary instructions.  It is my practice to give the jury the preliminary instructions in hard copy so they can have them with them, and they get a binder -- although I may or may not have binders available at the time we select this jury -- with paper for taking notes, their oath as a juror, and the preliminary instructions.

Any objection to proceeding in that way?

MR. KAHL:  No, Your Honor.

THE COURT:  From the defense?

THE DEFENDANT:  Summarize that real quick one more time.  I want to make sure I get that.

THE COURT:  So at the outset of the case, we give the jury preliminary instructions so they understand the ground rules --

THE DEFENDANT:  Okay.

THE COURT:  -- for the case:  An initial statement of the elements of the offense, initial statements of the burden of proof, those types of things.

THE DEFENDANT:  Okay.

THE COURT:  They get a copy of those so that they can read along with me and understand them, then they have them during the course of trial.  At the end of trial, they'll get final instructions that are more robust --

THE DEFENDANT:  Okay.

THE COURT:  -- that will provide additional information to them, to the extent necessary, for submission of the case.

THE DEFENDANT:  Do I have input on the final instructions?

THE COURT:  That was what you were supposed to be doing with Mr. Kahl in anticipation of trial when he sent those to you previously.

THE DEFENDANT:  Oh, I thought it was just preliminary.  It didn't say "final."  And his email said "preliminary" too.

THE COURT:  Okay.  Well, we will make a record about final instructions, and you'll have the opportunity for that.

THE DEFENDANT:  Okay.  I have input for it.

THE COURT:  But at this time, have you had the opportunity to review the preliminary instructions?

THE DEFENDANT:  No.  Actually, no.

THE COURT:  Okay.  Well, because of the fact that I will want to provide these in hard copy, I would ask for you to be prepared on Monday morning at 8:30.  The first thing we'll do is you will be able to make a record of anything that you object to in the preliminary instructions.

And an objection would be something that is not a correct statement of the law or otherwise inconsistent with the rules that the jury is expected to follow.

Do you understand that, Mr. Kock?

THE DEFENDANT:  I will probably have you repeat that Monday.  You probably will anyway; correct?

THE COURT:  No.  I'm telling you now so you're prepared on Monday morning at 8:30 because we're not going to waste the jury's time by having a lengthy record about this. If you have any objections to these, you need to be prepared first thing --

THE DEFENDANT:  Monday morning.

THE COURT:  -- on Monday morning to tell me --

THE DEFENDANT:  Okay.

THE COURT:  -- what is wrong with the instructions.

THE DEFENDANT:  All right.

THE COURT:  And an objection, for example, is that they are an inaccurate statement of the law or there is something -- I got the burden of proof wrong.  I said it was beyond a reasonable doubt, and, in fact, it was a preponderance of the evidence.  We know that's not true, but I am giving you examples of what you can say would be wrong from the preliminary instructions.

THE DEFENDANT:  Okay.

THE COURT:  Mr. Kahl, you can provide us with that feedback as well Monday morning in regards to the preliminary instructions that have been proposed.

MR. KAHL:  Thank you, Your Honor.

THE COURT:  I anticipate circulating some draft final instructions similarly Monday or Tuesday.  You'll have the opportunity to review those final instructions, and then we will make a record about them at the appropriate time.

It is my practice to read final instructions before closing arguments so that parties can reference them during closing arguments.

Any objection to that practice?

MR. KAHL:  No, Your Honor.

THE DEFENDANT:  I don't think so.  As long as I get my say.

THE COURT:  Yes.

Opening statements are, by local rule, 15 minutes.  I will enforce the local rule.  Opening statement is not argument.  Opening statement is a statement of what you expect the evidence to be or not to be.

During opening statements, you will be restricted, again, in your movement.  You'll be required to stay at the podium while speaking to the jury.

The defense has the option of either giving opening statement at the outset of trial or reserving opening and giving it before any defense case.

Mr. Kock, would you like to give your opening at the outset of trial?

THE DEFENDANT:  I think before.

THE COURT:  So at the beginning of trial?

THE DEFENDANT:  I think so.

THE COURT:  Okay.  So we'll plan on that.

Any questions about opening statements?

MR. KAHL:  No.  And I did want the Court to know that we will be using a modest PowerPoint for both opening and closing.

THE COURT:  So in opening statements, no exhibits may be displayed because they have not yet been admitted.

MR. KAHL:  Right.

THE COURT:  But you can reference the indictment or

any matter that you anticipate the issues being at trial, but you cannot, obviously, present any evidence because that evidence has not yet been admitted.

MR. KAHL:  Understood.  Thank you, Your Honor.

THE COURT:  In closing, when you use a PowerPoint, you may use that PowerPoint and include admitted exhibits because they have been admitted at that point.

Okay.  That brings me to closing arguments.  Closing arguments are arguments.  You are allowed to summarize what the evidence was, what you think the evidence showed.  It is not evidence, and it is not testimony.

Each side is provided one hour of closing time.  The Government gets to do an opening closing, and then the defense has the opportunity to argue, and then the Government, because they bear the burden of proof, has the opportunity for rebuttal argument.

The Government's one hour is divided between those two segments.  They cannot use more time in the second segment than they use in the first segment.  So if they only utilize 20 minutes in their opening closing argument, they're limited to 20 minutes in the second portion of their closing.

Any questions about that from the Government?

MR. KAHL:  No, Your Honor.

THE COURT:  From the defense?

THE DEFENDANT:  So 30 minutes for them, one hour for

me, 30 minutes for them?

THE COURT:  Yes, unless they opt to use less time during their opening, and then that's the limitation they have for their second period.

THE DEFENDANT:  Okay.

THE COURT:  Mr. Kock, you have indicated to me that you do not intend to testify and you intend to simply face your accuser and put the Government to their burden of proof; is that correct?

THE DEFENDANT:  Do I have to decide not to testify now?

THE COURT:  No.

THE DEFENDANT:  Or can I testify that day if I decide to?

THE COURT:  You can choose to present a defense up until the time that the case is submitted, meaning the Government rests, I will then ask you if you want to testify, and you can choose at that time.

THE DEFENDANT:  Okay.

THE COURT:  But what I want to make you understand is that the only testimony, the only evidence that you will be presenting is evidence that comes in under oath subject to cross-examination.

So you cannot present facts into evidence, for example, in your opening statement or in your closing argument

or in your questioning of other witnesses.  That is not an appropriate manner of putting information in front of the jury.

THE DEFENDANT:  Okay.

THE COURT:  Do you understand that?

THE DEFENDANT:  I believe so.

THE COURT:  Any other trial-related matters other than motions that are pending that the Government would like to discuss at this time?

MR. KAHL:  No.  Thank you, Your Honor.

THE COURT:  Mr. Kock, do you have any questions about the materials that we have covered here today?

THE DEFENDANT:  No.

THE COURT:  Do you understand my expectations for how the trial will be conducted?

THE DEFENDANT:  I believe so, but I'll probably make a mistake, just so you know.

THE COURT:  So there are differences between mistakes and violations of a court order.  If you make a mistake, we will address that mistake.

THE DEFENDANT:  Uh-huh.

THE COURT:  Once you have been explained that that is a mistake and that you cannot do that --

THE DEFENDANT:  Uh-huh.

THE COURT:  -- if you persist in doing that, then there will be consequences, as I previously discussed with you.

THE DEFENDANT:  Uh-huh.

THE COURT:  You understand that?

THE DEFENDANT:  I believe so.

THE COURT:  Okay.  Those are all of the matters in relation to the trial that I wanted to talk about.

The Government has pending motions in limine.  Those motions in limine are motions that move to exclude particular types of evidence consistent with the rules of evidence in this case.

Mr. Kahl, would you like to be separately heard on your motions in limine?

MR. KAHL:  Your Honor, just very briefly because I think the motions pretty much speak for themselves.

We would ask that the defense be prohibited from -- starting with the motion at document No. 58, we would ask that there not be extrinsic evidence of legal principles offered by the defendant during the course of trial that are not relevant to the pending charges.

With respect to docket No. 59, we would ask to exclude any suggestion or argument that the IRS should have been more diligent in detecting the defendant's fraud.

And, finally, in docket No. 69, we would ask to exclude these documents that the defendant apparently submitted to the IRS earlier this month saying that they were returns but which provide no information that could be used to compute his

taxes.

THE COURT:  Mr. Kock, you did not file a written resistance to any of these motions.

Would you like to be heard orally at this time as to the exclusion of that evidence?

THE DEFENDANT:  I'm not sure what document 58 is, for one.

THE COURT:  So the Government filed three motions in limine.  The first is a motion that, in short, moves to prevent you from talking about areas of the law that have nothing to do with this case.  That's document 58.

The second motion at document 59, in essence, moves to exclude you from presenting evidence or argument that the IRS was negligent in not catching the alleged fraud and so, therefore, you can't be held liable for it.

And then the third motion in limine is in regards to documents submitted to the Internal Revenue Service.  I think those are the documents that you submitted to the Court as well.

THE DEFENDANT:  Uh-huh.  Okay.

THE COURT:  And the Government is indicating that there's nothing about those documents that are relevant to a contested issue and those should be excluded.

THE DEFENDANT:  I disagree.

THE COURT:  Okay.  So this is your opportunity to

present legal argument as to why these pieces of evidence should come in.  I'll ask you to first address why you think the evidence of other law should come in during the course of trial?

THE DEFENDANT:  Again, what is document 58?  I'm not sure.  I put that in; is that correct?

THE COURT:  No.  Document 58 is the Government's motion in limine to exclude any references to areas of the law that are not at issue.

THE DEFENDANT:  I think that's subjective, number one.

THE COURT:  So it's not subjective.  It's an objective determination by the Court as to what the law is of the case, and I'll instruct the jury on the law.  I determine the law that applies to any given criminal case to be instructed to the jury.

And so what the Government has indicated is that there has been multiple filings from you citing Title 28 or different contractual or commercial obligations that have no bearing on this case, and they are moving to exclude those.

THE DEFENDANT:  Well, I do think the Treasury does have a responsibility to catch errors as such.  You know, I received two checks like clockwork.  I put international bills of exchange, credit instruments in to secure these things as a consumer/natural person, and I received checks.  I don't understand what has happened still, why that has happened, you

know.

And, actually, I don't even know why I'm here.  I believe Title 19 protects the consumer/natural persons but -- you know, from criminal charges.

THE COURT:  So that is the type of thing that Mr. Kahl has moved to exclude because the Court has found that those are not areas of the law that apply in this case, and so those are -- it would be confusing to the jury and otherwise for those matters to be put before it.

The Court has the prerogative to instruct the jury on the law.  It's within the sole province of the Court to determine the applicable law, and the Court will do so in this case.  For that reason, the Government's motion as to extrinsic evidence of law is granted.

Now, the next question was about the victim negligence.  You just articulated that you think the fact that the IRS paid you those checks, which I'm sure will come into evidence --

THE DEFENDANT:  Uh-huh.

THE COURT:  -- that that is a defense in this case.

THE DEFENDANT:  If they were -- if the tax returns were wrong, how was I not notified?  You know, I did everything in good faith with, you know, clean hands and with good reason, and how was I to know that I made a mistake?  That was -- you know, I would like to think the Treasury would catch something

like that, you know.

THE COURT:  Thank you, Mr. Kock.

Mr. Kahl, in terms of the motion in limine regarding victim negligence, the evidence in and of itself of the fact that the check for $10 million was paid out will come into evidence; correct?

MR. KAHL:  Yes, Your Honor.

THE COURT:  And you are precluding or attempting to preclude arguments that the fact that there was -- that the Internal Revenue Service should have acted with greater diligence before paying out these amounts should be excluded because victim negligence does not negate the elements of mail or wire fraud?

MR. KAHL:  That's our argument, yes.

THE COURT:  At this time the Court will not allow argument as to the obligation or lack of diligence on the IRS's part in uncovering the fraud.

But the facts of the -- the fact that this check was paid out is evidence that will come in, and that, in and of itself, is not anything that can be or will be excluded.

Do you understand the Court's ruling?

MR. KAHL:  Yes, Your Honor.

THE COURT:  Mr. Kock, do you understand the Court's ruling?

THE DEFENDANT:  Yeah.  I don't dispute that the checks

were paid out.

THE COURT:  Thank you.

THE DEFENDANT:  I just -- yeah.

THE COURT:  So the Court will grant the motion in limine to preclude argument, questions, or testimony suggesting that the Internal Revenue Service should have been more diligent in detecting Kock's fraud -- alleged fraud.

The third motion in limine is about the documents submitted to the IRS.  These were submitted attached to an untimely motion to dismiss at document No. 65.  They were addressed to the Court separately in a letter that was addressed to Rebecca Goodgame Ebinger, who sometimes acts as Judge Rebecca Goodgame Ebinger, and then it was a notice that was dated September 8 of 2021, as recorded, Dallas County, Iowa, Recorder.

Help me understand.  The Government is indicating that this should be excluded but then also that there is -- well, I don't understand how this isn't hearsay to start with, so I'm trying to understand what the Government's position is on the document.

MR. KAHL:  Sure.  My understanding or the inference I drew from reading the motion to dismiss was that Mr. Kock had also sent these documents to the Internal Revenue Service and that he was claiming that they constituted returns for the years that he's charged with, 2014 to 2018.

To the extent that he wants to offer evidence that these were presented to the Internal Revenue Service as returns, first, they're not returns; secondly, they weren't timely filed in any case.  We think they are irrelevant.  To the extent that the Court would allow him to offer that kind of evidence, the Government would then suggest a jury instruction along the lines of the Sixth Circuit instruction that we quoted in our motion in limine.

THE COURT:  Mr. Kock, would you like to be heard about these documents?

THE DEFENDANT:  Yeah.  I disagree.  They're not returns.  They're statements.  And if you look at the 1040 instructions on -- it's usually page 106 -- you can file a return or a statement, so those are statements.

THE COURT:  So my question for you is whether these documents -- these documents were just provided this month; correct?

THE DEFENDANT:  Correct.

THE COURT:  And so you gave them to the Court; correct?

THE DEFENDANT:  The notices; correct?  Is that what you're looking at?

THE COURT:  Yes.  You gave them to the Court; correct?

THE DEFENDANT:  Yes.

THE COURT:  And did you also at the same time submit

them to the IRS?

THE DEFENDANT:  I don't think I sent the notices. Like, the -- they'll say -- the ones that are recorded in the -- I'm sorry -- Dallas County?

THE COURT:  Yes.

THE DEFENDANT:  No.  Those did not go to the IRS.  I believe they went to Mr. Kahl here.

THE COURT:  You did not submit these to the IRS, none of these?

THE DEFENDANT:  Wait a minute.  Yeah.  Yeah, they did go.  The five -- actually, there was a -- I'm sorry -- five statements, I believe, for the first five charges that went to the IRS.  Yes, those did go in.

THE COURT:  And those just were this month?

THE DEFENDANT:  Yes.

THE COURT:  So the Court finds that the documents submitted this month to the IRS are not relevant.  They do not make a fact of consequence more or less probable in terms of the issues to be decided by this jury, and, for that reason, the documents will be excluded.

To the extent that there is some relevant probative value, any that exists, it would be outweighed by the confusion of the issues under -- and waste of time and primarily confusion of the issues under Rule 403, and so the Government's motion to exclude those documents is granted.

Any additional record in that regard from the Government?

MR. KAHL:  No, Your Honor.

THE COURT:  From the defense?

THE DEFENDANT:  No.

THE COURT:  Anything else that the Government needs to bring to my attention at this time?

MR. KAHL:  No.  I do not believe so.

THE COURT:  Mr. Kock?

THE DEFENDANT:  I just still have two affidavits that I want to --

THE COURT:  Ms. Sands, will you go obtain those from him.

Have you provided a copy of those affidavits to Mr. Kahl?

THE DEFENDANT:  I have one for him, yes.

THE COURT:  Have you submitted them to the Clerk of Court?

THE DEFENDANT:  No.  I am going to take the ones that I have and put them in today.

THE COURT:  So are these identical copies of what you're going -- are you providing the Court and the Government with identical copies of the documents you intend to file with the Clerk of Court?

THE DEFENDANT:  I believe so, yeah.

THE COURT:  Please ensure that you're giving me exactly what you are filing.

THE DEFENDANT:  Yeah, I believe so.

THE COURT:  And those are identical to what you're filing?

THE DEFENDANT:  Yeah.  I'm just going to put these in after this hearing.

THE COURT:  Are you asking the Court to take any action on these affidavits?

THE DEFENDANT:  Yeah.  I would like to explain what I am doing here, if you --

THE COURT:  Well, I am asking you -- these are -- affidavits are not -- they're not motions.  They're not evidence.  So what I am asking you is what action you're asking the Court to take based upon these documents.

THE DEFENDANT:  I would just like to be heard about them.

THE COURT:  Mr. Kahl, any objection to the defendant explaining the documents that he wishes to be entered into the record?

MR. KAHL:  No objection.

THE COURT:  You may proceed.

THE DEFENDANT:  Okay.  Thank you.  Thank you.

Okay.  So there's an Affidavit/Writ of Entry.  I --

THE COURT:  Mr. Kock?

THE DEFENDANT:  Yes.

THE COURT:  You're going to have to speak slowly.

THE DEFENDANT:  I'll try really hard.

THE COURT:  And note that we are at 9:37, and I indicated to you that the hearing would not take longer than an hour and a half.

THE DEFENDANT:  Okay.  All right.

Well, the only thing I want to bring to your attention in the Affidavit/Writ of Entry -- let's see here -- page 5 of 10 -- let's see here -- (d) in the middle of the page, in relation to my doing business as registration in the territorial jurisdiction of Article IV, Section 3, Clause 2, I am a consumer/natural person, et cetera.

And that's the only thing I'm going to say on that one.  The Court can probably, you know, read it and make their own interpretations.  I am not sure if I need to do that for you.

But I have this other affidavit.  I am still trying to understand why I'm in here.  Honestly, I haven't been told what I did wrong.  I am still scratching my head and going back over everything I've done in this tax return -- the two tax returns.

But I want to read some of these here because I see a lot of things that are false and misleading representations.

THE COURT:  Where are you reading from, sir?

THE DEFENDANT:  Oh, well, here.  Gosh, I have several

Title 15 Codes printed out.  I can start here.  I'll go through a few lines.

THE COURT:  No.  I mean, you gave me two documents.

THE DEFENDANT:  Yeah.

THE COURT:  You directed my attention to page 5 of the Affidavit/Writ of Entry, and I'm asking you to direct my attention to whatever it is that you wanted to put in the record with regards to either of these documents.

THE DEFENDANT:  Oh, forgive me.  (D) in the middle of the page just below the Article 23.

THE COURT:  You read that.

THE DEFENDANT:  Okay.

THE COURT:  And so you're proceeding to something else, I assume?

THE DEFENDANT:  Oh, yeah.  The next affidavit.

THE COURT:  And where in that affidavit are you directing my attention?

THE DEFENDANT:  I can just start reading, if you like.

THE COURT:  So I can read the document, so if there's anything -- any exposition or explanation that you want to give, you may do so at this time, but it is not necessary for you to read it to me.

THE DEFENDANT:  Okay.  Well -- okay.  I can give you an explanation, then.  So, basically, I see a lot of false and misleading representations in this whole thing.  I don't think

Mr. Kahl here has any authority to bring suit against me.  I don't believe I have authorized it pursuant to Title 15.  I don't believe I have given direct consent to even communicate with me as opposed to indirect consent pursuant to Title 15 Codes.

I do not believe it is possible under 15 U.S.C. 1692e to even have criminal charges put on a consumer/natural person pursuant to No. 7, "The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer."

I don't believe that -- I see Andrew H. Kahl is not the attorney.  Andrew Hayes Kahl that is registered in New York with registration number -- oh, gosh.  What is it?  It should be on here somewhere.  I believe it's, what, 27 -- how did that not print on here?

THE COURT:  Mr. Kahl, are you also a member of the Iowa Bar at this time?

MR. KAHL:  I am.

THE DEFENDANT:  Okay.  I believe he's a third-party debt collector under Title 15 here, and I don't -- oh, 2400075 is what I was looking for.

Yeah.  I think this is a Title 15 issue.

THE COURT:  Thank you, Mr. Kock.

THE DEFENDANT:  Yeah.

THE COURT:  You may file these documents with the

Clerk of Court.

MR. KAHL: would you like to be heard in response to the statements made by the defendant?

MR. KAHL:  No thank you, Your Honor.

THE COURT:  So the Court will take no action on these affidavits.  They'll be in the record.  The defendant has made his statements, and they are preserved for the record.  The Court has previously ruled on the defendant's motion to dismiss that this action commenced with the submission to the grand jury and return of an indictment in the Southern District of Iowa, and pursuant to the statutory authorities set forth in that indictment, the defendant has been alleged to have committed the crimes listed in that indictment and is appropriately to be tried in this court next week.

Anything further from the Government?

MR. KAHL:  No.  Thank you, Your Honor.

THE COURT:  From the defense?

THE DEFENDANT:  I have one more little notice.  The exemplification certificate has been tendered to as a tax payment to an Austin, Texas, drop box, and the tax assessment has been delivered to a Louisville, Kentucky, lockbox as a matter of national security --

THE COURT:  Mr. Kock --

THE DEFENDANT:  -- by my security agent.

THE COURT:  Mr. Kock, I do not know --

THE DEFENDANT:  Or surety agent.

THE COURT:  Pardon?

THE DEFENDANT:  My surety agent.  I misspoke when I said security.

THE COURT:  I don't know what you're talking about.

THE DEFENDANT:  It's just my notice.  I think they got it.

THE COURT:  Again, whatever you just said in regards to your drop box in Austin or in --

THE DEFENDANT:  Do you want me to read it again?

THE COURT:  You may read it slowly.

THE DEFENDANT:  The exemplification certificate has been tendered as a tax payment to Austin, Texas, drop box and a tax assessment has been delivered to Louisville, Kentucky, lockbox as a matter of national security by my surety agent.

THE COURT:  Thank you, sir.

THE DEFENDANT:  And an affidavit will be going out to the administrator today.

THE COURT:  So those statements have no bearing on the charges pending against you in this court, and we will proceed to trial on Monday as scheduled.

THE DEFENDANT:  That's just notice.

THE COURT:  Mr. Kock, I will remind you that you need to ensure that my staff has your email and your phone number for the purposes of any changes that occur.

I will also remind you that you will be expected to wear a face shield or a face mask throughout the course of trial, consistent with the Court's order, unless you produce medical documentation indicating that you cannot physically do so.

With that, we will be in recess until 8:30 Monday morning.

(The hearing concluded at 9:45 a.m.)

CERTIFICATE

I, Chelsey Wheeler, a Certified Shorthand Reporter of the State of Iowa and Federal Official Realtime Court Reporter in and for the United States District Court for the Southern District of Iowa, do hereby certify, pursuant to Title 28, United States Code, Section 753, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-titled matter and that the transcript page format is in conformance with the regulation of the Judicial Conference of the United States.

DATED this 27th day of October, 2021.


/s/*Chelsey Wheeler*

Chelsey Wheeler
Certified Shorthand Reporter