IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>JEFFREY ALLAN KOCK,<br><br>                Defendant. | Case No. 4:21-cr-054<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

**I.      INTRODUCTION**

Defendant Jeffrey Allan Kock faces sentencing for five counts of failing to file tax returns (counts 1–5), two counts of filing false claims (counts 6 and 7), one count of wire fraud (count 8), one count of mail fraud (count 9), three counts of money laundering (counts 10–12), and one count of concealment of an asset (count 13). His sentencing requires resolution of the following issues:

(1) The factual accuracy of paragraphs 9 through 24, 88 through 93, and 99;

(2) Whether counts 1–12 and count 13 are appropriately grouped, and relatedly, whether an enhancement under USSG § 3C1.1 applies;

(3) Whether the Court must consider Mr. Kock's ability to pay before imposing costs of prosecution;

(4) The appropriate special conditions of supervised release; and

(5) The appropriate sentence to impose.

Mr. Kock asks the Court to consider this memorandum in connection with his sentencing hearing.

1

## II. WITNESSES AND EXHIBITS

Mr. Kock does not anticipate calling any witnesses at the sentencing hearing. He intends to offer the following exhibits:

| | |
|---|---|
| **Exhibit A1** | Letter of Support from Roger Thomas Kock[1] |
| **Exhibit A2** | Letter of Support from Jenae Halstead |
| **Exhibit A3** | Letter of Support from Christa Fairchild |
| **Exhibit A4** | Letter of Support from Jane Pierce |
| **Exhibit A5** | Letter of Support from Amy Fury |
| **Exhibit B1** | UnityPoint September 2021 |
| **Exhibit B2** | Broadlawns Record June 2021 |

## III. ISSUES

Mr. Kock faces a maximum term of imprisonment of one year on counts one through five, five years on counts six and seven, twenty years on counts eight and nine, ten years on counts ten through twelve, and five years on count thirteen. There is no mandatory minimum. The Court may impose a term of supervised release of up to one year on counts one through five, and not more than three years on counts six through thirteen. A $25 special assessment is mandatory on counts one through five, and a $100 special assessment is mandatory on counts six through thirteen.

The advisory guideline range is in dispute. The parties agree Mr. Kock's criminal history category is I based on one point. The parties further agree that under USSG § 2S1.1, the base

---

[1] Mr. Kock's father, Roger Kock, sent this letter to the Court and it was filed on the docket in October 2021. ECF No. 110. Mr. Kock offers this letter for consideration at his sentencing, and supplements Roger Kock's handwritten letter with a typewritten version for ease of reading. Ex. A1.

offense level for counts one through twelve is 27, and that because Mr. Kock was convicted of a violation of 18 U.S.C. § 1957, a one-level enhancement applies under USSG § 2S1.1(b)(2)(A). The final Presentence Investigation Report (PSR) concludes, and the government contends, that counts one through thirteen are grouped under USSG § 3D1.2, and that a two-level enhancement applies for obstruction of justice under USSG § 3C1.1. Based on this conclusion, the PSR arrives at a total offense level 30. With a criminal history category I, this calculation leads to an advisory guideline range of 97 to 121 months' imprisonment.

Mr. Kock objects to the conclusion that count thirteen groups with counts one through twelve. He likewise objects to the application of an enhancement for obstruction of justice under USSG § 3C1.1 as impermissible double counting. If the Court sustains Mr. Kock's objections, the adjusted and total offense levels would be 28, and the resulting advisory guideline range is 78 to 97 months' imprisonment.

Mr. Kock additionally asks the Court to vary downward from the advisory guideline range for the reasons discussed below.

**IV.   ARGUMENT**

    **A. Mr. Kock's outstanding factual objections.**

Mr. Kock maintains his objections to paragraphs 9 through 24, 88 through 93, and 99 of the PSR. Beyond preserving these objections, Mr. Kock has no material outstanding factual objections to the PSR.

    **B. Count thirteen is a separate group under USSG § 3D1.2, and accordingly, the two-level enhancement under USSG § 3C1.1 does not apply.**

Because counts one through twelve involve the same alleged victim and the same alleged criminal objective or constitute part of a common scheme or plan, and because the applicable Chapter 2 guidelines are based on the amount of money involved, counts one through twelve are

grouped together in a single group. *See generally* USSG §§ 3D1.1–1.2. Count thirteen is covered by USSG § 2J1.2, which involves a different type of alleged harm and is not based on the amount of money involved in the offense. There is no specific offense characteristic in USSG § 2B1.1 or § 2S1.1 that applies based on concealment of an asset. Thus count thirteen falls into a separate group (hereinafter "group two"). Under USSG § 2J1.1, the base offense level for group two is 14. No specific offense characteristics apply. Because the offense level for group two is nine or more levels less serious than that applicable to group one (counts one through twelve), group two is disregarded. *See* USSG § 3D1.4(c).

Although there are circumstances under which the guidelines contemplate application of the USSG § 3C1.1 enhancement where the obstructive conduct occurs with respect to an underlying offense, the instant case does not fall into that category. Neither count thirteen nor Mr. Kock's alleged statement that he "hid" the E63 sedan were in furtherance of any objective to obstruct the criminal investigation into counts one through twelve. Nor did concealment of the sedan serve any such obstructive purpose. *See* USSG § 2J1.2 comment. n. 2(A), 3.

The Court instructed the jury on the elements of count thirteen, concealment of an asset, as follows:

> *One*, from on or about June 18, 2020, the Defendant knowingly took some action to prevent or impair the Government's lawful authority to take a 2020 Mercedes Benz E63 sedan titled in the name of the Jeffrey Allan Kock Trust into its custody; and
>
> *Two*, the Government's seizure of the vehicle was by a person authorized to make the seizure.

ECF No. 104 at 21.

Concealment of an asset does not require, nor did Mr. Kock have, any intent to obstruct the criminal investigation or prosecution of the other twelve counts. *See also* Trial Tr. v. III at 578–80 (govt. closing). Instead, Mr. Kock expressed to Agent Eklov that he did not believe the

government was authorized to seize the vehicle and declined to comply because he believed such a seizure would be in violation of his right to Due Process under the law. *See id.* at 594–96 (def. closing); 599 (govt. rebuttal describing letter to IRS). Indeed, when the Honorable Judge Jarvey held a hearing on the matter and at its conclusion, ordered Mr. Kock to turn over the vehicle, Mr. Kock provided the keys to the U.S. Marshals Service and informed them that the vehicle was at his home. Trial Tr. v. II at 328–30. Agents went to Mr. Kock's home, where they found the garage door open with the sedan parked inside. *Id.* at 330. Because the conduct underlying count thirteen was not an effort to obstruct the prosecution or investigation of counts one through twelve, Application Note 4(D) to USSG § 3C1.1 is not applicable.

Consequently, counts one through twelve comprise one group, while count thirteen is a second group. Under such a calculation, application of an enhancement under USSG § 3C1.1 is impermissible double counting. *See* USSG § 2J1.2, comment. n. 2(A) ("For offenses covered under this section, § 3C1.1 (Obstruction and Related Adjustments) does not apply, unless the defendant obstructed the investigation, prosecution, or sentencing of the obstruction of justice count."). If the Court sustains Mr. Kock's objection, the applicable total offense level is 28, and the resulting advisory guideline range is 78 to 97 months' imprisonment.

**C. Restitution.**

Mr. Kock acknowledges that restitution is appropriate in this case. He asks the Court to, consistent with the government's representations, include in its restitution order that the amount will be subject to a credit for all proceeds from the February 2022 sale of the three vehicles seized.

Mr. Kock also respectfully requests the Court waive interest on any restitution ordered or other financial obligations imposed based on his inability to pay interest under 18 U.S.C. § 3612(f)(3)(A).

### D. Costs of prosecution.

The government asks the Court to impose costs of prosecution in the amount of $1,675.39. The Court should decline to impose costs of prosecution as Mr. Kock is unable to pay. The government does not contend otherwise—instead, it argues the Court must impose costs without regard for Mr. Kock's ability to pay, relying on *United States v. Wyman*, 724 F.2d 684, 688–89 (8th Cir. 1984), and citing the prior panel rule. But "[t]he prior panel rule only applies when panel opinions actually conflict, which is simply not the case here." *United States v. Spotted Horse*, 916 F.3d 686, 692 (8th Cir. 2019).

In *Wyman*, the Eighth Circuit rejected the appellant's arguments that the court should have declined to impose costs of prosecution solely because he was proceeding in forma pauperis, and that mandatory imposition of costs on indigent defendants interfered with assertion of their constitutional rights. 724 F.2d at 668–69. Wyman did not argue the court erred in failing to consider his ability to pay. *See id.* Indeed, the Circuit seemed to acknowledge that some defendants may be unable to pay costs. *See id.* ("Further, we believe that a defendant who files in forma pauperis for the purpose of trial should *not necessarily* be made judgment proof under this statute." (emphasis added)).

The Eighth Circuit squarely addressed the question of whether under 26 U.S.C. § 7203 courts must consider ability to pay before imposing costs in *United States v. May*, 67 F.3d 706, 708 (8th Cir. 1995). The court acknowledged costs must be imposed, citing *Wyman*, 724 F.2d at 688, but concluded that a defendant's ability to pay must be considered before the imposition of mandatory costs. *May*, 67 F.3d at 707–08. The court reasoned that "26 U.S.C. § 7203 treats

costs of prosecution as a fine, and a defendant's ability to pay must be considered in determining the amount of a criminal fine." *Id.* at 708.

The *Wyman* court's refusal to adopt a blanket rule exempting those who qualify for court-appointed counsel from being assessed costs is not at odds with *May*'s holding. In *United States v. Tindall*, No. 99-2899, 2000 WL 872969, at *1 (8th Cir. June 30, 2000) (unpublished), the government urged the Circuit to revisit *May*, arguing *May* was "quite simply wrong." The Circuit declined to do so, finding it was "bound by the earlier panel's decision [in *May*] unless and until that decision is overruled by the en banc court." *Tindall*, 2000 WL 872969, at *1. Implicit in this conclusion is the premise that *Wyman* and *May* did not amount to an intra-circuit conflict.

*May* is binding authority and requires consideration of Mr. Kock's ability to pay before imposing costs of prosecution. Mr. Kock is fifty years old and has no assets. He owes $1,714.50 to the Polk County District Court and upwards of $10,000 in medical bills. PSR ¶ 96. He faces a significant period of incarceration during which his earning ability will be severely curtailed. Additionally, the government is seeking $405,160.85 in restitution, an obligation that will surely follow Mr. Kock for the remainder of his life. Accordingly, Mr. Kock asks the Court to decline to impose costs of prosecution given his inability to fulfill such an obligation.

### E. Special conditions of supervision.

Mr. Kock asks the Court to supplement the special conditions of supervision proposed in paragraphs 122 and 123 of the PSR to clarify that the conditions apply only so long as Mr. Kock owes restitution. As proposed, Mr. Kock would be subject to these conditions even if he fulfilled his restitution obligations. Although Mr. Kock recognizes it is unlikely he will fulfill his restitution obligations prior to the conclusion of any term of supervision imposed by the Court,

such a limitation would ensure the conditions involve "no greater deprivation of liberty than is reasonably necessary." *See* 18 U.S.C. § 3583(d)(2).

With regard to the special condition of supervision proposed in paragraph 124, Mr. Kock has no objection to the prospective application insofar as it requires him to abide by the law. But Mr. Kock objects to the retrospective application of this condition, as it would implicate his Fifth Amendment privilege against self-incrimination. *See United States v. Cavins*, 543 F.3d 456, 459 (8th Cir. 2008) ("If the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all."). The condition, as written, bars Mr. Kock from asserting his right to remain silent in response to questions posed by the Internal Revenue Service. Mr. Kock asks the Court limit this condition to matters unrelated to the instant criminal proceedings.

**F. The § 3553(a) factors support a below-guidelines sentence.**

The guidelines are only one of many factors a court must consider in fashioning an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Sentencing Reform Act instructs courts "to 'impose a sentence sufficient, but not greater than necessary,'" to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Id.* at 101 (quoting 18 U.S.C. § 3553(a)). To that end, Mr. Kock asks the Court to consider the following factors in deciding on a sentence.

Mr. Kock's history and characteristics offer mitigation. He was raised in a working-class family—his mother worked as a software engineer, and his father was in the United States Army. Mr. Kock was born in Panama, where his father was then deployed. Shortly after Mr. Kock's

birth, he and his mother returned to the United States. Mr. Kock's home life was stable, but due to external influences, his childhood was lonely. Mr. Kock was a frequent target of bullying by his peers. The verbal and physical abuse by other children was so severe that by ten years old, Mr. Kock began taking supplements in an effort to alter his appearance. Predictably, the effects of Mr. Kock's youth followed him into adulthood. *See T.K. v. New York City Dep't of Educ.*, 779 F. Supp. 2d 289, 305 (E.D.N.Y. 2011) ("The end of school does not bring an end to the damage done by years of harassment. As a result of this trapped setting, where harassment is a repeated occurrence, victims carry lasting emotional and psychological scars into adulthood." (citing Gayle L. Macklem, *Bullying and Teasing: Social Power in Children's Groups* 68 (2003))). The same insecurities that led Mr. Kock to begin taking supplements as a small child drove him to undergo cosmetic surgery as an adult. Ex. B1 at 3; PSR ¶ 68a. Mr. Kock continues to struggle with his mental health, including persistent anxiety and depression.

During the course of the instant criminal proceedings, Mr. Kock's anxiety and stress reached a crescendo. In June 2021, Mr. Kock visited his physician at Broadlawns due to his increased anxiety—his blood pressure was dangerously high, 158/110. Ex. B2; *see also Am. Heart Assoc., Understanding Blood Pressure Readings*, https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings (last visited Jan. 28, 2022). Just after 2:00 in the morning on September 1, 2021, Mr. Kock went to the emergency room because he was having a panic attack. Ex. B1. Mr. Kock hopes to receive professional help in addressing his mental health and coping skills in the future.

Notwithstanding Mr. Kock's internal scars, he has a good character. He spent much of his life working in the restaurant industry in pursuit of his goal of becoming an executive chef. PSR ¶¶ 82, 85. His family and friends describe him as kind, caring, and supportive. *See* Exs.

A1–A4.  Specifically, Mr. Kock has been a pillar of support for his parents.  When Mr. Kock's mother grew ill, Mr. Kock moved back in with his parents to help care for her.  Mr. Kock's father and sister described the importance of Mr. Kock's role as a caretaker as his mother's health continues to deteriorate.  Ex. A1, A2.

Mr. Kock's relatively insignificant criminal history and lack of previous incarceration likewise is a mitigating factor.  Aside from one traffic violation, Mr. Kock's only encounter with the criminal justice system this millennium was a ticket for possessing drug paraphernalia (a marijuana pipe) in 2018.  He has no history of violence.  Mr. Kock has never been to prison before.  Consequently, the Court could reasonably conclude that a term of imprisonment below the lengthy sentence recommended by the advisory guidelines "would probably mean more to [Mr. Kock] and have a greater impact than on someone who had previous experience being incarcerated."  *United States v. Baker*, 445 F.3d 987, 990 (7th Cir. 2006).

Mr. Kock also asks the Court to consider the ongoing COVID-19 pandemic in fashioning his sentence.  Courts have recognized that the risk of COVID-19 to incarcerated persons is "significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected."[2]  As of January 28, 2022, the Bureau of Prisons (BOP) is reporting 8,087 federal inmates and 1,898 BOP staff currently infected with COVID-19.[3]  The number of active infections has skyrocketed over the past several weeks.[4]  Since the

---

[2] *See, e.g.*, *Basank v. Decker*, 449 F. Supp. 3d 205, 211 (S.D.N.Y. 2020).

[3] Federal Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/ (updated weekdays at 3:00 p.m., last visited Jan. 28, 2022).

[4] *See, e.g.*, Walter Pavlo, *COVID Cases Spike, Federal Bureau of Prisons is Not Releasing Eligible Inmates* (Jan. 11, 2022), https://www.forbes.com/sites/walterpavlo/2022/01/11/as-covid-cases-spike-federal-bureau-of-prisons-is-not-releasing-eligible-inmates/?sh=72fbda7f786d ("On December 10, 2021, there were 265 active COVID-19 infections among federal prisoners across the country… now, just a month later, that figure is at 3,761 cases and climbing.  If the past is any

start of the pandemic, more than 55,061 BOP inmates have been infected, along with 11,472 staff.[5]  At least 300 individuals have lost their lives to the virus while in BOP custody.[6]  Of those incarcerated in the United States, at least 34 in 100 have been infected with the virus—as compared to 9 in 100 of the United States population as a whole.[7]  Those infected and incarcerated are likewise more likely to die from the virus.[8]  Mr. Kock is particularly susceptible

---

indication of how the BOP is reporting these numbers, it is grossly underestimated.").  The article cites BOP's COVID statistics from January 10, 2022.  Eighteen days later, the number of active COVID infections in BOP has more than doubled.  *See* Fed. Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/ (last updated Jan. 28, 2022).

[5]  *Id.*  The inmate total includes the 8,087 federal inmates presently infected, plus 46,690 reportedly recovered, along with 284 inmate deaths reported by BOP.  *Id.*  With regard to the staff, the total includes the 1,898 staff presently infected, along with 9,567 recovered, and 7 deaths.  *Id.*

　　Importantly, the inmate totals reported on the BOP's website do not reflect the total number of individuals infected while in BOP custody—once an individual is released from custody, the BOP removes that individual from the "recovered" total.  *See id.*; *see also* Univ. of Iowa Federal Crim. Defense Clinic, *Graphing COVID Cases in the Bureau of Prisons* (last visited Jan. 28, 2022), https://law.uiowa.edu/compassionate-release-work-federal-courts.  Nor do these totals include individuals currently or formerly infected in BOP custody at private federal prisons or contract facilities, or those who were transferred to private institutions or contract facilities.  Federal Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/.  Accordingly, the total number of individuals who have been infected with COVID-19 while in BOP custody is greater than 55,061.

[6]  University of Iowa College of Law Federal Criminal Defense Clinic, *They Are Human Too* (last updated Jan. 27, 2022), https://law.uiowa.edu/sites/law.uiowa.edu/files/2022-01/They%20Are%20Human%20Too%20-%201-27-22.pdf.

[7]  Eddie Burkhalter et al., *Incarcerated and Infected:  How the Virus Tore Through the U.S. Prison System*, New York Times (Apr. 10, 2021), https://www.nytimes.com/interactive/2021/04/10/us/covid-prison-outbreak.html?smid=url-share.

[8]  *Id.*

11

to complications from the virus due to his asthma,[9] hypertension,[10] and obstructive sleep apnea.[11] *See* Ex. B2 at 2.

In addition to the health implications and risks to Mr. Kock arising from the ongoing pandemic, because of the pandemic, both Polk County Jail and BOP facilities have restricted visitation, limited movement, and access to programming is greatly reduced if not completely on hold. While prudent measures likely founded in the name of protecting both individuals in custody and staff, the measures no doubt present significant hardship to those serving a term of imprisonment throughout this pandemic. Mr. Kock asks the Court to take these conditions into account when fashioning the appropriate sentence.[12]

---

[9] CDC, *People with Moderate to Severe Asthma* (last updated Apr. 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html ("People with moderate-to-severe or uncontrolled asthma are more likely to be hospitalized from COVID-19.")

[10] CDC, *People with Certain Medical Conditions* (updated Dec. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Having heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19.").

[11] Nancy Lapid, *Sleep Apnea Linked to COVID-19 Outcomes* (Nov. 11, 2021), https://www.reuters.com/business/healthcare-pharmaceuticals/sleep-apnea-severity-linked-covid-19-outcomes-2021-11-10/ ("[S]leep-related hypoxia did increase infected patients' odds of needing to be hospitalized or dying from COVID-19.").

[12] *See United States v. Mateo*, 299 F. Supp. 201, 211 (S.D.N.Y. 2004) ("The concept of what is 'just punishment' thus contemplates a prospective, empirical assessment, necessarily imprecise, of the accumulation of reasonably foreseeable, ordinary hardships and suffering that any given offender is likely to experience in the typical case during the course of a particular range of imprisonment. Accordingly, insofar as the incarceration of a particular offender imposes terms and conditions that expand the reach of consequences ordinarily associated with confinement substantially beyond the zone of what is to be reasonably foreseeable and 'to be expected,' *Koon* [*v. United States*], 518 U.S. [81,] 110 [(1996)], in the typical case, the corresponding sentence is likely to work excessive hardships and exact a toll of suffering 'of a kind, or to a degree,' 18 U.S.C. § 3553(b), that, if not otherwise mitigated, would inflict upon the particular individual a magnitude of punishment effectively disproportionate to that meted out to offenders in the ordinary case. To

## V. **CONCLUSION**

For the foregoing reasons, Mr. Kock respectfully asks the Court to impose a sentence below the advisory guideline range.

Respectfully submitted,

  /s/  *Mackenzi J. Nash*
Mackenzi J. Nash, Asst. Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: mackenzi_nash@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2022, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

*/s/Mackenzi Nash*

---

that extent, that penalty may exceed what is necessary to serve the prescribed purposes of sentencing.").