IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

- - - - - - - - - - - - - - X
UNITED STATES OF AMERICA, :
                          :
    Plaintiff,         :
                          :
vs.                       :          Case No. 4:21-cr-00054
                          :
JEFFREY ALLAN KOCK,       :     DETENTION HEARING TRANSCRIPT
                          :
    Defendant.        :
- - - - - - - - - - - - - - X

                              Courtroom, Fourth Floor
                              U.S. Courthouse
                              123 East Walnut Street
                              Des Moines, Iowa
                              Thursday, August 19, 2021
                              2:52 p.m.

BEFORE:  THE HONORABLE STEPHEN H. LOCHER, Magistrate Judge.

APPEARANCES:

For the Plaintiff:        ANDREW H. KAHL, ESQ.
                          United States Attorney's Office
                          U.S. Courthouse Annex
                          110 East Court Avenue, Suite 286
                          Des Moines, Iowa  50309-2053

For the Defendant:        JEFFREY ALLAN KOCK, Pro Se
(Via videoconference)

                    KELLI M. MULCAHY, CSR, RDR, CRR
                       United States Courthouse
                   123 East Walnut Street, Room 115
                      Des Moines, Iowa 50309

2

I N D E X

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| For the Government: | | | | |
| Branden Brown | 3 | | | |

P R O C E E D I N G S

(In open court, with the defendant present via videoconference.)

THE COURT:  All right.  We're going to go back on the record.  We do have a court reporter here in the courtroom now, and I'll just note for the record what happened that led up to this moment.

So the hearing was set for an initial appearance on a pretrial release violation and failure to appear bench warrant.  By agreement of both the Government and Mr. Kock, who is representing himself pro se, we're going to proceed straight to a detention hearing in this matter.  And at this time, I know the Government is prepared to present evidence on the alleged violation that led to this hearing.

So with that, Mr. Kahl, you may call your witness.

MR. KAHL:  Call Branden Brown.

THE DEPUTY CLERK:  Please raise your right hand.

BRANDEN BROWN, GOVERNMENT'S WITNESS, SWORN

THE DEPUTY CLERK:  Thank you.

DIRECT EXAMINATION

BY MR. KAHL:

Q.  Please state and spell your name for the record.

A.  Branden Brown.  First name Branden, B-r-a-n-d-e-n, last name Brown, B-r-o-w-n.

Q.  And you are employed as a probation officer in the Southern

District of Iowa?

A.   That's correct.

Q.   And do your duties and responsibilities include the supervision of the defendant in this case, Jeffrey Allan Kock?

A.   That's correct.

Q.   I want to draw your attention to Tuesday of this week, August the 17th, the date that the defendant failed to appear before a -- at a hearing before Judge Ebinger.

     Did you speak to the defendant, Mr. Kock, by phone that afternoon?

A.   Yes, I did.

Q.   Did you place the call or did he place the call?

A.   So, actually, I called him.  This would have been approximately 2:16 p.m. that day, after the hearing.  He didn't answer the phone, but then he called me back shortly after that.

Q.   And did you discuss the fact that he hadn't appeared for the hearing?

A.   Yes, I did.

Q.   And what did he tell you?

A.   He told me he thought the phone -- or the hearing was over the phone.  He was expecting someone to get ahold of him.  No one did, and then he was just waiting.

     MR. KAHL:  No further questions, Your Honor.

     Oh, wait.  I'm sorry.  I did have one further question.

BY MR. KAHL:

Q.   During the time that you've been supervising Mr. Kock, has he resided at a residence on Sugar Street in West Des Moines?

A.   Yes, he has.

Q.   And was there any indication that he did not get notice of the hearing set for the 17th?

A.   No.  I believe he did.  I don't have any indication that he didn't receive notice for that hearing.

MR. KAHL:  Thank you.  Nothing further, Your Honor. I'm sorry.

THE COURT:  Thank you.

Mr. Kock, you are entitled to cross-examine Mr. Brown and ask him your own questions.  I will tell you that you're also going to have the opportunity to state your own position on this, so don't feel like you have to try and establish your case through him.  But with that as an introduction, you are entitled to ask him questions, so you may proceed.

DEFENDANT KOCK:  Okay.  Branden, honestly, I'm not sure what to ask you.  I think you're correct.  That's exactly the way I remember it.  I really don't have any questions for you.

THE COURT:  Okay.  Then at this time I'm going to excuse Mr. Brown from the witness stand.

(Witness excused.)

THE COURT:  Mr. Kahl, is there any other evidence the Government wishes to present, either directly or by way of

proffer?

MR. KAHL:  By way of proffer.

THE COURT:  Please proceed.

MR. KAHL:  And with reference to the court record, we would point out that the defendant's order setting conditions of release on the very first page requires him to appear at all proceedings as required; that Judge Ebinger's text order, which he does not dispute having received, made crystal clear that the hearing on the 17th was to be an in-person hearing.  That's at Docket No. 35.

As Judge Ebinger made the record the other day, the order was sent to that address on Sugar Street in West Des Moines.  It was never returned to the court for nonreceipt.

The claim -- given the clarity of the order, the claim that Mr. Kock was expecting a phone call is simply not credible. I would acknowledge that even phone -- there has been a phone hearing set later on in this case, but even for phone hearings, those are to be initiated by the parties.  It is not a situation where one sits back and waits for the phone to ring.  And I would reference Docket No. 30.

So for those reasons, we think we have established the violation, at least at this point in the proceeding, realizing Mr. Kock has not had the opportunity to present evidence.

THE COURT:  Thank you, Mr. Kahl.

All right.  Mr. Kock, at this time, you are entitled to

speak on your own behalf, and so I will give you that opportunity.  Please proceed.

DEFENDANT KOCK:  Okay.  I'm just going to speak freely, if that's all right with the Court.

THE COURT:  It is.

DEFENDANT KOCK:  Okay.  I have been -- I was asked by my sister to run her business, her and her boyfriend's business, while they're on vacation, so I rely on the computer a lot more than, I'd say, mail.  I type in my name, and there's a court schedule that comes up.  Oh, gosh, if you Google it, it will show like everybody's -- I'm not even sure what to call it.  I wish I could Google it on here.

But I just search my last name, and it shows the hearings coming up.  And I saw the one for the 17th, and I, honest to God, just made a mistake.  I thought it was a telephone hearing.  I meant no harm.  I ask the Court's forgiveness.  It wasn't intentional.

I think that if you ask the ladies in the office, I realized I screwed up, and I called them.  And I know Branden's right, he did call me, and I called him back.  But I thought the call in to the office was way more important because that's where the hearing was.

And I remember -- I can't tell you who answered it, but I remember there was a name Hilary that I heard.  And I was sweating.  I felt absolutely terrible.  I had no idea.  If I

knew it was going to be this bad -- I mean, I feel terrible. That wasn't my intention to do that.

You know, and I got to add I had cataract surgery, I don't know, earlier this year, and it's still weird. And I don't know if I saw it wrong. I don't know. I just -- I could have sworn it was a phone hearing. You know, I hate to see my fate --

(Interruption from videoconference failure.)

DEFENDANT KOCK: -- be forgiven by Branden and Andrew Kahl.

THE COURT: Mr. Kock, the last sentence before you said something about being forgiven by Branden and Andrew Kahl, the last sentence before that we couldn't catch because of a glitch in the video. Can you repeat what you said, sir?

DEFENDANT KOCK: Oh, gosh, I don't even know. I think it was probably just asking for forgiveness. I feel bad about making the mistake. I mean, you know, what's the guilty conscience, mens rea? I feel terrible, you know. I made a mistake. You know, I just -- I hate to see this hold my progress back.

You know, honestly, I like to think I'm a pretty great friend of the United States, and I'm in the process of building my own record to demonstrate that. So, you know, I'm locked up. How am I going to show this? And I think I have a great record building that.

I just don't know -- you know, if they want to send extra -- you know, making an appointment at the -- what is it, the -- somebody said it earlier, in the office, the --

THE COURT: Yeah. It's the Courthouse Annex is where the United States Probation Office is.

DEFENDANT KOCK: The annex, yes, Your Honor. I was trying to think of the word "annex." I'll bring Andrew Kahl coffee every week, if he wants it. I'll bring Branden coffee. You know, if I got to check in extra, I'm okay with that.

I think they know this is very stressful for someone like me in this position. I'm managing it well, but it's -- you know, I mean, I think mistakes are forgivable. I made a mistake. I just don't want it to seal my fate.

THE COURT: All right. Mr. Kock, I appreciate that.

Mr. Kahl, earlier in the hearing you had identified some potential additional conditions of release that may be appropriate. Two questions for you. First, now that you've had the opportunity to hear from Mr. Kock, is it the Government's position that detention is appropriate or are there conditions that you believe would be sufficient to reasonably assure the appearance of the defendant as required?

And second, if there are conditions that would be imposed beyond the conditions that already exist, please go ahead and list those out for me.

MR. KAHL: Sure. I think under the circumstances, the

Court likely could fashion some conditions that would assure his continued appearance. I believe that those conditions ought to be in the nature of more intense supervision by the United States Probation Office. And as I indicated earlier, I would put the onus for that on the defendant.

We would specifically recommend periodic in-person reporting to the U.S. Probation Office at the annex. Mr. Kock offered to appear once every week. I think, from having visited with the probation office, maybe once every two weeks between now and the time of trial would be sufficient at least for the start. I believe a residential curfew would be appropriate and also that the defendant be subject to additional random home visits.

THE COURT: Thank you, Mr. Kahl.

Mr. Kock, I'm going to turn it back over to you.

DEFENDANT KOCK: Okay.

THE COURT: And this time I'm not asking for your testimony or explanations, but the Government has proposed additional conditions of release on you, and I want to hear your position on whether you agree that those conditions are appropriate or if there are some other conditions that you would propose instead in addition to the conditions that have already been ordered.

DEFENDANT KOCK: Okay. I'm okay with those conditions. I have nothing to hide. I like Branden. As long as it's

Branden.  I think I've already established a rapport with him. I like him.  He's welcome anytime.  I've opened up to him.  I vented, you know, on him a couple times.  I think he knows this. I have no problem with that.  I'm okay with that.  Random home visits are fine.  The -- what was the one before, the curfew?

THE COURT:  Curfew, correct.

DEFENDANT KOCK:  Okay.  Well, I'm trying to find a job as a bartender because I make really good money, and that -- I mean, I don't -- you know, I don't use street drugs, I don't -- drinking is very rare.  I think a curfew might hurt me there.  I don't know.  I make the best money tending bar.  I think it's -- you know, I'd really like to find something and go back to that while I'm working on this.  Because it's -- it can be like nights, late night, it doesn't interfere during the day when I'm doing research and given everything.

THE COURT:  Okay.  Well, here's what I'm going to do. First of all, I do find that there was a violation.  I think you've effectively admitted that, and I know you have an explanation for it or a mitigation for it, but I do find there was a violation.

And I agree with the Government that the text order that set the status conference was clear.  It said it was going to be set for August 17th, 2021, at 2:00 p.m. in Des Moines, Room 160, first floor north, before Judge Ebinger.  So the text order was not ambiguous as to the nature of the hearing, and

your failure to appear is, in fact, a violation of the conditions of release.

That being said, Mr. Kock, I accept your word that you're going to do better from this point forward and that we won't have future situations like this.  And I appreciate your willingness to agree to additional contact with the probation office to try to make sure that we don't have any future violations.

So I am going to order that you be released on conditions.  It will be the same conditions as before except you will be required to report to the pretrial services office at least once every other week and then after that as directed by the probation office.

So I'm going to leave it in Mr. Brown's discretion as to how much contact is necessary, but at a minimum, for starters, for the first month, it's going to have to be at least once every other week, so twice in the first month.  And then after that it will be up to Mr. Brown to decide the level that is appropriate.

The conditions of release already permit the probation office to visit you at any time at your home or other approved residence, so I don't need to make any change to the conditions of supervised release to allow for additional random visits. But I will caution you that now that this has happened, I expect that the probation office will, in fact, be inclined to make

more random visits.

I'm not at this time going to order a residential curfew. It's a close call, and I think it's a legitimate request for the Government to make, but I'm not going to order it because I do want to make sure that you have the opportunity to remain or -- either seek or remain employed. That is an important part of what you should be doing while on pretrial release.

So the bottom line is I am going to order you released on conditions. It will be the same conditions as before plus this additional expectation of contact with the pretrial services office.

Mr. Kahl, is there anything else that you believe should be addressed today?

MR. KAHL: Yes. There is one other thing, and that would be the matter of rescheduling the pretrial conference that didn't happen on Tuesday.

THE COURT: That is a good point. I do not have at my disposal Judge Ebinger's calendar, so I don't know that I can give you an exact date and time right now.

What I can tell you, Mr. Kock, is you need to look out for that, and it will be an in-person conference. And I think you know that by now, but you need to expect that. So when that order comes through setting it, you'll need to make sure you're there in person prepared to proceed.

14

DEFENDANT KOCK:  Okay.

THE COURT:  Anything else, Mr. Kahl, beyond that?

MR. KAHL:  No.  Thank you, Your Honor.

THE COURT:  Mr. Kock, anything else from you?

DEFENDANT KOCK:  I have a strange request.  And hear me out.  If you don't ask, you don't get it.

I don't have a driver's license.  And I told Branden this, that I use my passport to travel in a car.  Being in Polk County for the time that I have, I don't want to -- I don't want to be here again.  This is absolutely miserable.  Can we amend the agreement that I get my passport back so that I can be in the car and not be subject to arrest by Urbandale, Clive, West Des Moines?

And let me explain why.  The first thing you guys might -- I can see the Andrew or Branden back there shaking their heads, but I'm not a flight risk.

My home is here.  My mother has something called normal pressure hydrocephalus.  She has an appointment on the 23rd at 8:30 in the morning.  She's going to get a shunt in her head, something that drains the fluid and -- you know, down into her body so she comes back to being the mom that I know and love.  It's been hard.  It's hard to talk about it.  And my dad has something else to do.

And, again, I think I've talked to Branden about this, but I tell you what, I don't want to get picked up for not

having a driver's license.  I've got some bills that I need to pay for some tickets, but money is pretty tight for me right now.  It's a hard life.

THE COURT:  So --

DEFENDANT KOCK:  Does that make any sense?

THE COURT:  Mr. Kock, I understand the request.  I am not going to agree to allow you to have your passport back.

DEFENDANT KOCK:  Okay.

THE COURT:  It's standard in virtually every single criminal case that I've ever been a part of --

DEFENDANT KOCK:  Understand that.

THE COURT:  -- that a defendant who has a passport must surrender it and doesn't get it back.  I do suspect there are other options for you by way of identification cards, and I encourage you to look into other options.  But that condition of release that you surrender your passport and not obtain a new passport, that will remain in effect.

DEFENDANT KOCK:  Okay.

THE COURT:  Okay.  With that, I will get an order setting the conditions of release out by the end of the afternoon today.

And with that, we are adjourned.  Thank you.

MR. KAHL:  Thank you, Your Honor.

DEFENDANT KOCK:  Thank you, Your Honor.

(Proceedings concluded at 3:10 p.m.)

C E R T I F I C A T E

I, Kelli M. Mulcahy, a Certified Shorthand Reporter of the State of Iowa and Federal Official Realtime Court Reporter in and for the United States District Court for the Southern District of Iowa, do hereby certify, pursuant to Title 28, United States Code, Section 753, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated at Des Moines, Iowa, this 29th day of August, 2022.

Kelli M. Mulcahy, CSR, RDR, CRR
Federal Official Court Reporter