UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

_____
                                )
UNITED STATES OF AMERICA,        )
                                )        CASE NO. 4:21-cr-54
         Plaintiff,              )
                                )
     vs.                         )        TRANSCRIPT OF INITIAL
                                )        APPEARANCE AND ARRAIGNMENT
                                )        PROCEEDINGS
JEFFREY ALLAN KOCK,              )
                                )
         Defendant.              )
_____

                                COURTROOM 455, FOURTH FLOOR
                                U.S. COURTHOUSE
                                123 East Walnut Street
                                Des Moines, Iowa 50309
                                Tuesday, May 4, 2021

BEFORE:  THE HONORABLE HELEN C. ADAMS, CHIEF MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:              ANDREW KAHL
                                United States Attorney's Office
                                U.S. Courthouse Annex
                                110 East Court Avenue, Suite 286
                                Des Moines, IA 50309


For the Defendant:              JEFFREY ALLAN KOCK, PRO SE


                Chelsey Wheeler, CSR, RPR, FCRR
                  United States Courthouse
                   123 East Walnut Street
                   Des Moines, IA 50309

P R O C E E D I N G S

(In open court with the defendant present.)

THE COURT:  All right.  The first matter we have up this afternoon is United States of America versus Jeffrey Allan Kock.  That's Criminal No. 4:21-cr-54.

Is Mr. Kock here?

THE DEFENDANT:  The defendant?

THE COURT:  Yes.

THE DEFENDANT:  Yeah.  The defendant is here.

THE COURT:  And what's your -- say your last name for me.

THE DEFENDANT:  The last name of the defendant is Kock.

THE COURT:  Kock.  Okay.  Sorry.

All right.  Mr. Kock, do you want to come up here to this table.

THE DEFENDANT:  It's Jeff.  You can just call me Jeff.

THE COURT:  Well, I can't.  I appreciate that, but if you want to come up here to this table, I would appreciate it, sir.

THE DEFENDANT:  Mister is my dad.

THE COURT:  All right.

THE DEFENDANT:  How are you today?

THE COURT:  I'm good.

THE DEFENDANT:  Good.

THE COURT:  The defendant, Mr. Kock, is present here in the courtroom.

THE DEFENDANT:  Yes.

THE COURT:  And also here on behalf of the United States Government is Andy Kahl.

I, first, apologize for being late.  We had a little incident that we had to take care of, so it ran a little longer than I expected, so I apologize for that.

All right.  We are here, Mr. Kock, with respect to an initial appearance and arraignment of you concerning an indictment that the Government filed against you, it looks like, on April 13 of 2021.

Do you have a copy of that indictment?

THE DEFENDANT:  I think so, but not with me.

THE COURT:  Okay.  Let me have --

MR. KAHL:  I have an extra copy.

THE COURT:  Do you have an extra one, Mr. Kahl?  That would be great.  Thank you.

THE DEFENDANT:  Oh, yeah, I don't have one of these at all.

THE COURT:  All right.  Mr. Kock a couple of initial matters before --

THE DEFENDANT:  Oh, just Jeff, please.

THE COURT:  I need to call you Mr. Kock for the record.

THE DEFENDANT:  Okay.

THE COURT:  But I appreciate that.

All right.  I need to just go over a couple of initial matters with you.  The first is your right to remain silent. That means you don't have to discuss the charges against you with anybody.  If you do make any statements to anybody other than a lawyer that you would have, the Government can and likely will use those statements against you.

If you've already made any statements to anybody before you came into court today, you've got no obligation to make any further statement.  And if at any point in time during the proceedings you decide to give up your right to remain silent and you make a statement, you can also stop talking and say, "I'm done, and I don't wish to make any further statement."

You also do have the right to have a lawyer to represent with you anytime you're being questioned by the Government or its agents.

My suggestion is that you not make statements to anybody other than to your lawyer, if you have one --

THE DEFENDANT:  Uh-huh.

THE COURT:  -- and that would be my suggestion to you.

Do you understand your right to remain silent?

THE DEFENDANT:  I comprehend, yes.

THE COURT:  All right.  You also have the right to a

lawyer.  If you would like to have a lawyer and you want to hire one, you can certainly do that.  If you would like to have a lawyer and you cannot financially afford one, I would appoint a lawyer for you if you meet the financial qualifications and if you want me to do that.

THE DEFENDANT:  No.

THE COURT:  Do you want me to appoint counsel for you?

THE DEFENDANT:  No.  No.  Thank you.

THE COURT:  All right.  Do you understand your right to have a lawyer.

THE DEFENDANT:  I comprehend it, yes.

THE COURT:  All right.  We will have to have a hearing at a later date --

THE DEFENDANT:  Okay.

THE COURT:  -- at which time I'll have to go over with you sort of the -- what you have to comply with if you're going to represent yourself.

THE DEFENDANT:  Sure.

THE COURT:  And I'll have to go through several questions with you.  We won't do that today.  I'll set a different hearing for that, but we'll get that set before you leave here today.

THE DEFENDANT:  Okay.

THE COURT:  The next thing we're going to do is what we call the arraignment.  So I'm going to ask Mr. Kahl to tell

you a little bit more about the charges against you in that indictment that you have, including any potential penalties if you're convicted.

Mr. Kahl.

THE DEFENDANT:  Well, can I ask the Court a couple questions before anything?

THE COURT:  Just a second.  Just one second.

All right.  You can.

THE DEFENDANT:  Okay.

THE COURT:  I may or may not be able to answer them.

THE DEFENDANT:  Oh, sure.  No, that's fine. Everything I say is on special trust deposit, by the way, everything from here on out.

I am curious to see if anybody in this court has written delegated authority to administer my estate, Jeffrey Allan Kock, because I have mine right here.  I've got an original.  It's a power of attorney from my mother.  So I want to know if anybody has that written delegated authority to administer the estate.

THE COURT:  All right.  I understand that you have submitted that paperwork to the Court.

THE DEFENDANT:  Uh-huh.

THE COURT:  It has been filed in the court's records.

THE DEFENDANT:  Uh-huh.  Sure.

THE COURT:  And I also understand in there you had

requested that the Court dismiss the charges against you.

THE DEFENDANT:  Was that in what I filed yesterday?

THE COURT:  I have three different filings.

THE DEFENDANT:  Yeah.  The one yesterday I was getting ready for taxable termination, so we can put that aside.  I might have jumped the gun on that.

THE COURT:  All right.  I was going to say I have three different filings from you.  So those have been submitted.  They're filed in the record, so you have a record made with respect to that.

At this point in time, I am not going to get into a further discussion with you about the issue because that's not the purpose of today's hearing.

THE DEFENDANT:  Okay.

THE COURT:  The only purpose of today's hearing is to give you your initial appearance.

THE DEFENDANT:  Oh, sure.

THE COURT:  And to have Mr. Kahl give you some information about the charges and for me to get your initial plea to those charges.  Okay?

THE DEFENDANT:  Okay.  Well, wait.  One more question, though.  I said I had, I think, two.

THE COURT:  That's fine.

THE DEFENDANT:  I also want to know if anyone in this courtroom has a registered lien interest because I have three

UCC documents right here with me, and I have copies for everybody.

THE COURT:  All right.  And, again, I believe you provided those to the Court earlier; correct?

THE DEFENDANT:  I know I had to correct a couple, so I have three new ones possibly.

THE COURT:  Well, you can provide those to the Clerk of Court, and I will have her file those on the record so they will be in there.  And, again, at this point in time, that is not an issue for us to debate at today's hearing.

THE DEFENDANT:  Sure.

THE COURT:  Okay.  Anything else?

THE DEFENDANT:  No.  I'm just going to hang out here.

THE COURT:  All right.  Mr. Kahl.

MR. KAHL:  Your Honor, on April 13, 2001 [sic], the United States Grand Jury for the Southern District of Iowa returned a 13-count indictment against the defendant, Jeffrey Allan Kock, charging the following offenses.

Counts 1, 2, 3, 4, and 5 each charged willful failure to file income tax returns, in violation of Title 26, United States Code, Section 7203.  The maximum penalties for that offense are up to one year in prison, a fine not to exceed $100,000, and one year of supervised release.

Counts 6 and 7 of the indictment charged the defendant with making false claims against the United States, in

violation of Title 18, United States Code, Section 287.  That carries a maximum penalty of up to five years in prison, a fine not to exceed $250,000, and up to three years of supervised release.

Count 8 charges wire fraud, in violation of Title 18, United States Code, Section 1343.  That carries a maximum penalty of 20 years in prison, a fine not to exceed $250,000 or both, and up to three years of supervised release.

Count 9 charges the defendant with mail fraud, in violation of Title 18, United States Code, Section 1341.  That, likewise, has a maximum penalty of up to 20 years in prison, a fine not to exceed $250,000 or both, to be followed by up to three years of supervised release.

Counts 10, 11, and 12 charge the defendant with money laundering in violation of Title 18, United States Code, Section 1957.  That carries a maximum penalty of up to ten years of imprisonment, a fine not to exceed either $250,000 or twice the amount of criminally derived property involved in the transaction or both a fine and imprisonment, and up to three years of supervised release.

Count 13 charges the defendant with concealment of assets, in violation of Title 18, United States Code, Section 2232(a).  Upon conviction, that would carry a maximum penalty of up to five years in prison, a fine not to exceed $250,000 or both, and up to three years of supervised release.

In addition, with respect to Counts 1 through 5, the maximum penalty would also include the cost of prosecution.

The defendant would also be subject to a $100 special assessment for the felony counts of the indictment; that is, Counts 6 through 13, and a $25 special assessment for the misdemeanor counts, Counts 1 through 5.

Additionally, the indictment includes a notice of forfeiture.

For the record, I would inquire:  Has the defendant received a copy of the indictment?

THE DEFENDANT:  That first page?

THE COURT:  No.  The whole indictment that he gave you.

THE DEFENDANT:  Oh, this thing right here?

THE COURT:  Yes.

THE DEFENDANT:  Yes.  Defendant is right on top of it physically.

MR. KAHL:  Sir, is your name correctly spelled on the indictment?

THE DEFENDANT:  It looks like there's a little difference on the defendant's name there.

THE COURT:  How is your name spelled, Mr. Kock?

THE DEFENDANT:  Well, the defendant's name is Jeffrey A. Kock on his Social Security card, so they don't really match.

THE COURT: Is your middle name not Allan?

THE DEFENDANT: Oh, my middle name is, yeah. Well, actually, my given name is Jeffrey Allan. My family's name is Kock. So I can't really claim that, can I?

THE COURT: So Jeffrey is your first name?

THE DEFENDANT: Jeffrey is, yeah, my first name.

THE COURT: And Allan is your middle name, spelled A-l-l-a-n?

THE DEFENDANT: A-l-l-a-n, yep. Jeffrey Alan is what my mother and my father gave me.

THE COURT: All right. And Kock is your family name?

THE DEFENDANT: Yep. Surname. Hereditary. Correct.

THE COURT: And that's K-o-c-k?

THE DEFENDANT: Yep.

THE COURT: Okay. Go ahead, Mr. Kahl.

MR. KAHL: Sir, do you understand the general nature of the charges?

THE DEFENDANT: Do I understand, meaning agree?

THE COURT: No. Do you understand what the charges are.

THE DEFENDANT: I see they're in front of me, but I don't agree with them, no.

THE COURT: All right. Do you understand, though, that you've been charged with these, that the Government is bringing them against you?

THE DEFENDANT:  I think that the defendant is being charged.

THE COURT:  Go ahead, Mr. Kahl.

MR. KAHL:  And, sir, do you waive reading of the indictment, or do you want it read into the record?

THE COURT:  So, basically, he's asking you do you want him to read word for word what's here.

THE DEFENDANT:  No.  I don't think we want to waste the Court's time.  I think this whole hearing is a waste of time really, but...

THE COURT:  Go ahead, Mr. Kahl.

MR. KAHL:  Are you ready to enter your plea to the charges?

THE DEFENDANT:  I have a couple questions for you.

THE COURT:  Go ahead.

THE DEFENDANT:  Is that all right?

So you're Andrew H. Kahl; correct?

THE COURT:  Yes.  That's Mr. Kahl.

THE DEFENDANT:  Okay.  So you work for me.  And I assigned you a deed and a deed of assignment months ago, and that was to the effect of a security that was sent to Todd A. Eklov.  So you work for me, and I want you to fix this whole matter.  I sent that in good faith, according to the United States Codes, your Codes, and you work for me you're my trustee, and you're not doing your job.

THE COURT: All right. Mr. Kock, do you want to enter pleas of not guilty with respect to the charges?

THE DEFENDANT: Oh, the plea is I didn't abandon my securities.

THE COURT: All right. Are you guilty of any of these charges?

THE DEFENDANT: I don't believe so.

THE COURT: Okay. So I am going to enter pleas of not guilty with respect to all the charges.

THE DEFENDANT: Okay. And you'll set up a trial, then, I guess, for Jeffrey Allan Kock right here?

THE COURT: We'll set up a trial. We will set up dates here in just a moment. So I will get those pleas of not guilty entered.

THE DEFENDANT: Okay. And also for the record, everybody here is a trustee. I'm the beneficiary of the trust, just so we know our roles.

THE COURT: All right. I appreciate that's your position.

THE DEFENDANT: Yep.

THE COURT: I don't agree with you, but that's okay. We can disagree.

Okay. The next thing I need to do is, since this is your first appearance here in federal court concerning the indictment, I am required, pursuant to the Due Process

Protection Act, to give the following order:

I want to confirm to the United States Government that they have an obligation to disclose to Mr. Kock all exculpatory evidence -- that would be evidence that favors him or casts doubt on the United States' case -- as required by *Brady v. Maryland* and its progeny.  Failure to timely disclose exculpatory evidence by the Government could result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action or sanctions by the Court.

I will also enter a written order to that effect pursuant to the Due Process Protection Act.

All right.  This case has been assigned to Judge Rebecca Goodgame Ebinger to be the trial judge, and so we're going to set the trial in for our trial setting period, which commences on July 6 of 2021 in front of Judge Ebinger.

The Government shall produce any Rule 16 discovery materials by May 14 of 2021.  Any reciprocal discovery that would be due would be due by May 24.  Pretrial motions deadline is set for June 14.

And then the plea entry deadline in the case is set for June 21.  The plea entry deadline is an important date because if you want to be considered for a possible reduction in offense level based upon acceptance of responsibility, a key

factor that Judge Ebinger may consider is whether or not a guilty plea was entered on or before the plea entry deadline.

Also, because this case is assigned to Judge Ebinger, we do set a telephonic status conference in the case. That will be -- obviously, Mr. Kock, if you are representing yourself, you would be involved in that. Mr. Kahl would be involved. And, ultimately, if you did have a lawyer, your lawyer would be involved in that.

That hearing is set for June 17, 2021, at 9:30 in the morning. That will be in front of me, and it's going to be by telephone, so there will be a call-in number which will be contained in the court's docket so that you'll have a copy of the phone number and access code to call into for that status conference.

All right. What is the Government's position on Mr. Kock's release pending trial?

MR. KAHL: Can I backtrack to the issue of discovery. We're certainly willing and able to provide Rule 16 discovery upon the defendant's request, and I would ask for the record whether the defendant is requesting discovery under Rule 16.

THE COURT: Mr. Kock, do you want the Government to provide you with the discovery that they're required to provide under our rules of -- Criminal Procedure Rule 16? That would be information that they have related to the case. That would be required if you request it.

THE DEFENDANT:  Oh, if you have anything against the defendant, yeah, go ahead and send it over.

THE COURT:  Okay.  Mr. Kahl, I take that as a "yes" that he would like you to provide the Rule 16 discovery.

MR. KAHL:  Thank you, Your Honor.

THE COURT:  You're welcome.

MR. KAHL:  Regarding release, the Government has no quarrel with the Pretrial Services Report that the defendant should be released on conditions after processing by the United States Marshals Service if he hasn't been processed yet.

Two conditions I would suggest.  I believe he would be required to surrender his passport.  The Pretrial Services Report indicates that he does have one, so we ask that he surrender his passport.  We also suggest that the defendant be required to seek and maintain employment as directed and supervised by the probation office.

THE COURT:  All right.  Thank you, Mr. Kahl.

Mr. Kock, it's my understanding that you had an interview with one of the members of our probation office?

THE DEFENDANT:  Sure.

THE COURT:  All right.  And have you seen the proposed conditions that they have suggested to the Court for your continued release on those conditions?

THE DEFENDANT:  I don't remember.

THE COURT:  Okay.  Marissa, can you -- here's a -- do

you have a copy, or can you make a copy?

We'll get you a copy.  She's going to print you a copy off so you can see them before we go over those with you.

All right.  What you've got in front of you now, Mr. Kock, is a proposed order from the United States Probation Office setting conditions of your release.  I am prepared to sign that order.  The Government is not contesting it, and if set forth in those conditions -- if those conditions are set forth, it would not require that you be detained in any capacity.

So I am prepared to enter that order, but I wanted you to have an opportunity to look at it before I went through that with you.

THE DEFENDANT:  All right.  So -- sorry.  I have difficulty seeing right now, so it's taking me about three times as long to read things.

THE COURT:  That's all right.  Take your time.  And I will tell you that these are standard conditions --

THE DEFENDANT:  Uh-huh.

THE COURT:  -- that the Court puts on anybody who we release on federal charges and allow them to remain out.  Just so you know, there's nothing unusual --

THE DEFENDANT:  Oh, sure.

THE COURT:  -- about what's been proposed here.

THE DEFENDANT:  B.  I don't really like B.  I prefer

to work for myself instead of being a -- what is it, a W-2 employee?

THE COURT:  Well, that doesn't indicate you have to be a W-2 employee.  It just indicates that you have to work with the probation office --

THE DEFENDANT:  Oh, actively seek.

THE COURT:  -- to maintain or actively seek employment.  And that could be self-employment as long as it's something that they're able to verify.

THE DEFENDANT:  Okay.  I don't know how they're going to verify it, but...

Yeah.  I don't know.

THE COURT:  I'm going to -- while you're looking at that, I am going to ask my CSO in the back.  Does Mr. Kock still need to be processed by the Marshal Service?

COURT SECURITY OFFICER:  (Nods head.)

THE DEFENDANT:  Okay.  So you said you want to go over this with me?

THE COURT:  Yes.  So I'm going to tell you, this is the order I am going to enter, so I will allow you to remain on release with these following conditions:  That you must not commit an offense in violation of federal, state, or local law while you're on release in the case; that you must advise the Court or the probation office in writing before any change of address or phone number; that you would appear at any

proceedings that you would be required to appear here for at the courthouse; and if there is a sentence that is imposed, that you would surrender for that sentence.

You would report to the probation office at the phone number indicated, as directed by them; maintain or actively seek employment.  You would surrender your passport to the probation office and not obtain a new passport.  Also, your travel would be restricted to the state of Iowa unless you got permission from the Court or from the probation office to travel outside the state of Iowa.

You would refrain from possessing a firearm, ammunition, destructive device, or other dangerous weapon; refrain from excessive use of alcohol; refrain from use or unlawful use of narcotic drugs or other controlled substances; submit to any method of testing that is required by the probation office to determine if you have used a prohibited substance; undergo a substance abuse evaluation and participate in substance abuse treatment if that is deemed advisable.

You would report if you had any contact with law enforcement to the probation office.  And then also, lastly, you would permit the probation officer who is assigned to you to visit you at your approved residence.

Do you understand the conditions that I am placing upon you in order for you to be released?

THE DEFENDANT:  Do I understand, like, agree?

THE COURT: No. I'm saying do you understand --

THE DEFENDANT: Do I comprehend?

THE COURT: Do you understand them, yes.

THE DEFENDANT: I comprehend.

THE COURT: All right. Now, in order for me to release you, you're going to have to sign this document on the fourth page. By signing the document, you are indicating that you are aware of these conditions and that you understand that if you don't abide by these conditions, in all likelihood, what will happen is you would be arrested. At that time the Court would have to determine whether you could remain on pretrial release or whether you would be revoked at that time.

THE DEFENDANT: Okay.

THE COURT: Do you understand that?

THE DEFENDANT: If I did anything wrong with the defendant it would surely be by accident, in advance.

THE COURT: All right. So I am going to sign it, and you'll need to sign it and put your address there and your phone number. Do you see where that is on page 4?

THE DEFENDANT: Yeah. I see.

THE COURT: Let me do this. I will get this signed, and I am going to hand you the signed copy so you can sign it, and then we will get you a copy of the fully signed copy before you go up -- or go down, I guess, to the Marshal Service because you're going to have to go see them on the third

floor --

THE DEFENDANT:  Okay.

THE COURT:  -- to go through some processing with them.  They just need to get some information from you.  Okay?

Have him sign the one I just signed.

We're going to have you sign the one I just signed, Mr. Kock.

THE DEFENDANT:  Oh, I thought you said this one.

THE COURT:  No.  Sign the one I just signed so you and I have signatures on the same page.  Okay?

THE DEFENDANT:  Thank you.

THE COURT:  All right.  Mr. Kahl, other than completing that and getting Mr. Kock finished up so he can go to the marshals, anything further that we need to do on your behalf?

MR. KAHL:  Other than setting a *Faretta* hearing, no, Your Honor.

THE COURT:  Okay.  All right.  While she makes a copy of that, Mr. Kock, we do need to set that other hearing that we talked about.  Mr. Kahl referred to it as a *Faretta* hearing.

THE DEFENDANT:  Sure.

THE COURT:  That's the name of a case, so that's why it's called that.  That's the hearing where I will have further conversation with you about your decision to represent yourself, and then we'll have to make a finding on the record.

If you have questions about that process or what might happen at that, I know Mr. Herrold from the Federal Public Defender's Office is here, and I am sure he would be happy to address those questions when he has a free minute either today or at a different time.  Okay?

THE DEFENDANT:  For sure.

THE COURT:  Okay.  So I can either do it on Friday -- that would be this Friday -- so that would be the 7th.

THE DEFENDANT:  I have eye surgery on Thursday, so Friday is right out of there.

THE COURT:  Okay.  Monday at 1:30.

THE DEFENDANT:  Okay.

THE COURT:  That would be the 10th at 1:30.

THE DEFENDANT:  Can we tentatively do it, seeing how I feel?

THE COURT:  Well, I need to set a date that's good, so if you would rather I went out to Tuesday, I can look and see what we have on Tuesday.

THE DEFENDANT:  Yeah.  Tuesday is cool.

THE COURT:  All right.  Will you ask Kay what we have available?

Will you be able to drive then?

THE DEFENDANT:  I don't know.  I'm not sure.

THE COURT:  Okay.  Do you have transportation if you can't drive?

THE DEFENDANT:  Oh, yeah.

THE COURT:  Okay.  Okay.  2:00 on Tuesday, May 11.  5-11 at 2:00.  Okay.  And that will be back here in the same courtroom.

THE DEFENDANT:  Same?  Okay.  All right.

THE COURT:  Okay.  Thank you.  We're in recess.

Now, did you give him a copy of that yet?

COURTROOM DEPUTY:  I did.

THE COURT:  So you've got a copy of the signed conditions of release?

THE DEFENDANT:  Yes.

THE COURT:  And the court services officer will direct you where you need to go to talk to the marshals for your processing.  Okay?

THE DEFENDANT:  Okay.

(The hearing concluded.)

CERTIFICATE

I, Chelsey Wheeler, a Certified Shorthand Reporter of the State of Iowa and Federal Official Realtime Court Reporter in and for the United States District Court for the Southern District of Iowa, do hereby certify, pursuant to Title 28, United States Code, Section 753, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-titled matter and that the transcript page format is in conformance with the regulation of the Judicial Conference of the United States.

DATED this 6th day of September 2022.


/s/*Chelsey Wheeler*

Chelsey Wheeler
Certified Shorthand Reporter