# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-1368

———————————————

United States of America

*Plaintiff - Appellee*

v.

Jeffrey Allan Kock

*Defendant - Appellant*

———————————————

No. 22-1576

———————————————

United States of America

*Plaintiff - Appellant*

v.

Jeffrey Allan Kock

*Defendant - Appellee*

—————————

Appeal from United States District Court
for the Southern District of Iowa - Central

—————————

Submitted: January 10, 2023
Filed: April 13, 2023

—————————

Appellate Case: 22-1368    Page: 1    Date Filed: 04/13/2023 Entry ID: 5264816

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

ERICKSON, Circuit Judge.

A jury convicted Jeffrey Kock on thirteen charges stemming from a fraud and tax evasion scheme. Kock raises four issues on appeal: (1) his waiver of the right to counsel was not knowing, intelligent, and voluntary; (2) the evidence was insufficient to sustain the convictions; (3) the district court erred in refusing to admit evidence of the Internal Revenue Service's ("IRS") lack of diligence; and (4) the district court improperly applied a two-level sentencing enhancement for obstruction of justice. In a cross-appeal, the government contends the district court erred in refusing to award costs of prosecution. We affirm the convictions but vacate the judgment and remand to the district to consider the government's request for costs of prosecution.

## I.    FACTUAL BACKGROUND

Jeffrey Kock was indicted in April 2021 on five counts of failure to file a tax return, in violation of 26 U.S.C. § 7203; two counts of making false claims against the United States, in violation of 18 U.S.C. § 287; wire fraud, in violation of 18 U.S.C. § 1343; mail fraud, in violation of 18 U.S.C. § 1341; three counts of money laundering, in violation of 18 U.S.C. § 1957; and concealment of an asset, in violation of 18 U.S.C. § 2232(a).

We view the facts in a light most favorable to the jury's verdict. Kock's troubles with the IRS were ongoing for more than a decade prior to trial. After filing personal federal tax returns for 20 years, Kock stopped filing returns in 2009, even though his employers provided him with W-2 forms each year. In 2019, Kock electronically filed a fraudulent Form 1041 (Tax Return for Estates and Trusts) in the name of the Jeffrey Allan Kock Trust (the "Trust"), claiming a refund of $20,671.00. The IRS issued a Treasury check in the amount of $20,671.00, which Kock deposited into an account at Bankers Trust. A few months later, in early 2020,

Appellate Case: 22-1368    Page: 2    Date Filed: 04/13/2023 Entry ID: 5264816

Kock used the United States mail to file a second fraudulent Form 1041 in the name of the Trust. In this return, Kock sought an additional refund of $10,921,192.00. The IRS issued a check in the amount of $10,921,192.00, which Kock also deposited into his Bankers Trust account.

In February 2020, Kock used some of the money to purchase two Mercedes Benz vehicles: a 2020 E63 sedan (the "E63 sedan") for $146,271.80 and a 2017 G63 SUV (the "G63 SUV") for $122,556.05. The car salesman who sold Kock the cars testified that Kock stated the money to buy the cars came "possibly [from] the sale of some business." The following month, Kock unsuccessfully attempted to apply $75,000.00 from the Bankers Trust account to Iowa Realty on a purchase of a multi-million-dollar home. Kock also purchased a third Mercedes Benz car, a 2019 coupe (the "SL coupe") for $117,581.70 using the proceeds of his false claims to the IRS.

Concerned by Kock's unusual banking activity, Bankers Trust arranged a meeting with Kock. During the meeting, Kock acknowledged receiving the Treasury checks and described the tax system as "a game of monopoly." Armed with these unusual responses, bank officials contacted the IRS and law enforcement about their conversations with Kock. The IRS determined that the refunds had been paid in error and asked Bankers Trust to return the funds. Bankers Trust froze Kock's account and later returned to the IRS the amount in the account, which was $10,462,422.15. In June 2020, IRS agents obtained seizure warrants for the three Mercedes. Agents seized the G63 SUV and the SL coupe and when they attempted to seize the E63 sedan, Kock told them that he "hid" it. The district court held a hearing and ordered Kock to turn over the keys to the E63 sedan, which agents later recovered from his parents' home.

## II.    PROCEDURAL BACKGROUND

During Kock's initial appearance, he asked to represent himself. On May 27, 2021, the magistrate judge convened a Faretta v. California, 422 U.S. 806 (1975), hearing to address the request to proceed *pro se*. After confirming that Kock wanted

-3-

Appellate Case: 22-1368     Page: 3     Date Filed: 04/13/2023 Entry ID: 5264816

to proceed *pro se*, the court offered him standby counsel. Kock refused standby counsel stating, "I didn't hire her. I don't need her assistance." The court informed Kock that it did not believe it was a wise choice for him to proceed *pro se*. During the Faretta examination the court inquired about Kock's education, employment history, and lack of any formal legal education. Kock stated that he had not finished college and had no legal training but he "read[s] quite a bit."

When the court inquired about Kock's criminal history, he claimed not to recall details of relatively recent charges. When asked about any prior federal charges, Kock responded that he believed he had some. Kock was likewise evasive when the court asked about prior representation on state charges, stating he did not recall if he was represented by counsel on charges in 1997 and 2018. Kock also could not remember whether his 2018 conviction was by trial or plea. The court pushed Kock noting that 2018 was not very long ago, but Kock insisted that he did not remember. Kock's answers about the pending federal charges resulted in a discussion about the meaning of the phrase "nature of the charges" but ended with Kock insisting "I can comprehend what's going on."

When the court advised Kock on the statutory maximum penalties, supervised release terms, and monetary penalties for each count, Kock indicated that he understood the penalties he was facing. In response to the court's question about his experience with the Sentencing Guidelines, Kock initially stated that he was not worried about the Sentencing Guidelines. When the court made further inquiry, Kock indicated the Guidelines were not what he was focused on.

The court asked Kock why he wanted to represent himself and Kock replied, "Well, I don't think there's any controversy anymore. I registered a bond condition to answer any judgment from the court on May 18th." The court informed Kock that there was still a live controversy and inquired whether he had any other reason for requesting to proceed *pro se*. Kock then quoted from Corpus Juris Secundum:

-4-

Appellate Case: 22-1368     Page: 4     Date Filed: 04/13/2023 Entry ID: 5264816

> **Attorney and Client.**  His first duty is to the courts and the public, not to the clients, and wherever the duties to his client conflict with those he owes as an officer of the court in the administration of justice, the former must yield to the latter.

Kock expressed dissatisfaction with that statement of an attorney's duties.

During the hearing, Kock was also told that he would be required to follow the rules of evidence and procedure and that the court would be unable to provide assistance.  Kock indicated he understood, which caused the court to caution him about the dangers of self-representation.  Kock replied:

> Well, I don't know how I can represent myself when I am myself.  I know I'm not the defendant.  I know the defendant is a fiction.  I will come in here and present myself, but I will not hire a lawyer.  I do not need their assistance, and if one is appointed, I will terminate them.

The court asked one last time whether Kock still wanted to proceed *pro se* and he said, "I don't want you to appoint somebody."  The court confirmed Kock's decision was voluntary, made of his own free will, and granted his request.

Kock failed to appear for a hearing on an alleged pretrial release violation.  Kock was again warned of the hazards of proceeding *pro se* by the presiding magistrate judge.  Kock persisted in his decision to proceed *pro se*.

The district judge raised the issue of Kock's self-representation a third time at a status conference about a month prior to trial.  Kock once again reasserted his concern about the divided loyalties of lawyers, stating "any attorney that would be appointed to me would be a bar member, and it puts you guys all on the same team. It terrifies me, to be honest."  The court pointed out that Kock's views of the role of counsel were misguided, explaining:

> [T]he concept of one team is inaccurate.  There is no one monolithic team of attorneys.  There are standards that govern everyone who

-5-

Appellate Case: 22-1368    Page: 5    Date Filed: 04/13/2023 Entry ID: 5264816

practices law, and they, under those standards, are required to zealously represent the clients that they work with. And there are standards of conduct that govern every judge, state or federal, that require us to be independent and to not have a bias in favor of one side or the other. And those are the standards of conduct that would apply to this Court, to the prosecutor, and to any defense attorney that would appear in this case.

Kock responded, "I hear what you're saying. I still don't think it's in my best interest to take representation."

Kock's decision to proceed *pro se* was raised again at the final pretrial conference on September 24, 2021. Kock reiterated, "I don't want an attorney speaking for me or brokering deals behind my back, no." The district judge asked Kock if he was waiving his right to counsel "knowingly and voluntarily because you want to be the person speaking for yourself in court?" Kock replied, "Yeah, I do." The court appointed standby counsel on the morning of trial with Kock's consent. Kock accepted appointment of counsel following the guilty verdicts.

At sentencing, the district court determined Kock had a total offense level of 30 and a criminal history category of I, resulting in an advisory Sentencing Guidelines range of 97 to 121 months' imprisonment. In calculating Kock's offense level, the court added a two-level adjustment for obstruction of justice under U.S.S.G. § 3C1.1, based on Kock's concealment of the E63 sedan after the IRS attempted to execute the seizure warrants. Kock objected to this enhancement, arguing his concealment conviction should have been counted as a separate "group," which would have reduced his total offense level to 28. The district court overruled Kock's objection and sentenced Kock to 97 months' imprisonment followed by three years of supervised release.

## III.    DISCUSSION

Kock raises four issues on appeal and the government has filed a cross-appeal raising one issue. We consider each in turn.

-6-

## A. Right to Self-Representation

We review a district court's decision to accept a waiver of the right to counsel *de novo*. United States v. Stanley, 891 F.3d 735, 738 (8th Cir. 2018). The Sixth Amendment guarantees the accused the right to self-representation, even if such representation is to the accused's detriment. Faretta, 422 U.S. at 818-21, 834. Before accepting a waiver of counsel, "[w]arnings of the pitfalls of proceeding to trial without counsel . . . must be 'rigorous[ly]' conveyed." Iowa v. Tovar, 541 U.S. 77, 89 (2004) (second alteration in original) (quoting Patterson v. Illinois, 487 U.S. 285, 298 (1988)).

Before accepting a defendant's request to proceed *pro se*, the district court "must be satisfied that the waiver of counsel is knowing and voluntary." United States v. Turner, 644 F.3d 713, 720-21 (8th Cir. 2011) (internal citation omitted). "The adequacy of the waiver depends on the particular facts and circumstances of each case, including the background, experience, and conduct of the accused." Id. (internal citations omitted). We will uphold "the grant of a defendant's motion to represent himself if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self-representation." United States v. Tschacher, 687 F.3d 923, 932 (8th Cir. 2012) (internal quotations and citation omitted).

A review of the judges' colloquies with Kock reveal that Kock made the choice to represent himself at trial with eyes open, after being advised of the risks and disadvantages of proceeding *pro se*. See Faretta, 422 U.S. at 835 ("Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." (internal quotation and citation omitted)). When Kock first moved to represent himself, the magistrate judge recognized his right to do so but proceeded to question Kock about his understanding of the dangers and disadvantages of his decision. The

-7-

court informed Kock that his decision must be knowing and voluntary and warned him that "it really isn't a very good idea in federal court for an individual to represent themselves in a federal criminal case because of the complexities and the issues that can come up." The court highlighted several other risks Kock faced if he insisted on proceeding *pro se*, including the lengthy penalties he faced; his lack of experience and knowledge of federal rules and procedures; and other potential pitfalls, such as unintentionally giving up or waiving issues. Despite the exhaustive interchange about the risks of self-representation, the role of standby counsel, the rules that Kock would be expected to familiarize himself with and follow, Kock repeatedly expressed a desire to represent himself at trial. Later a different magistrate judge and the district judge reiterated these warnings and Kock continued to insist on his right to self-representation.

While Kock claims that the transcripts of the discussions about his decision to proceed *pro se* demonstrate that he lacked understanding and the court failed to adequately explain the court-appointed counsel's ethical duty of zealous representation, "neither the Supreme Court nor this court has ever adopted a list of essential points that must be conveyed to a defendant in order for a waiver of counsel to be deemed knowing and voluntary." Turner, 644 F.3d at 722. The "key inquiry" is "whether the accused was made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forgo the aid of counsel." United States v. Kiderlen, 569 F.3d 358, 364 (8th Cir. 2009) (internal quotation omitted). This was manifestly done by the court over the course of four separate hearings.

In our judicial system, a defendant is allowed to make choices to his own detriment because he has a right "based on the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." Weaver v. Massachusetts, 137 S. Ct. 1899, 1908 (2017). Here, Kock indicated he understood the court's concerns, but he wanted to represent himself and did not want the assistance of counsel. The record reflects that after assessing Kock's competence and adequately informing Kock of the risks and

Appellate Case: 22-1368   Page: 8   Date Filed: 04/13/2023 Entry ID: 5264816

dangers of self-representation, Kock knowingly and voluntarily waived his right to counsel.

### B. Sufficiency of the Evidence

We review *de novo* the denial of a motion for acquittal under Federal Rule of Criminal Procedure 29. United States v. Little, 961 F.3d 1035, 1037 (8th Cir. 2020). "We will affirm unless, viewing the evidence in the light most favorable to the Government and accepting all reasonable inferences that may be drawn in favor of the verdict, no reasonable jury could have found the defendant guilty." Id. (citation omitted). While reviewing Kock's claims, we are not empowered to weigh evidence or assess the credibility of witnesses. United States v. Garcia-Hernandez, 530 F.3d 657, 661 (8th Cir. 2008).

Kock claims the evidence is insufficient to sustain any of his counts of conviction. On the failure to file tax returns counts, Kock contends the prosecution failed to establish he knew of his obligation to file tax returns or that his failure to file tax returns was willful. The evidence in the record refutes Kock's contention. Kock filed returns for 20 consecutive years and then stopped. We have held that properly filing tax returns in the past may be evidence of willfulness of failure to file in the years charged. United States v. Francisco, 614 F.2d 617, 618 (8th Cir. 1980). The prosecutor also presented evidence that Kock received a Form W-2 each year, which should have served as a reminder of the filing requirements, as well as testimony from a bank official who recounted Kock's statement that the tax system was like "a game of monopoly." On this evidence, a reasonable jury could conclude that Kock knowingly and willfully failed to file tax returns for the charged years.

Kock next claims the prosecution failed to establish both that he knew the two returns he filed on behalf of the Trust were false and that he had an intent to deceive the IRS. A review of the record demonstrates that each fraudulent return contains Kock's name, and one was signed by Kock; Kock admitted he deposited the refund checks in his Bankers Trust account; and Kock's modest earnings and financial

-9-

condition made it highly implausible that he believed he was in control of a trust that was owed millions of dollars.  Kock told the car salesman handling the purchase of the Mercedes vehicles that he was using money from the sale of a business—not from a trust tax refund.  This evidence is sufficient for a reasonable jury to find Kock knew the claims he submitted were false and he intended to deceive the IRS.

Kock also asserts that evidence to support the mail and wire fraud charges is insufficient because the prosecutor failed to present evidence that Kock devised a scheme to fraudulently obtain the money—claiming the evidence only demonstrated that Kock's refund claims were incorrect.  "A scheme to defraud includes acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent the other party from acquiring material information." United States v. Kidd, 963 F.3d 742, 747 (8th Cir. 2020) (internal quotation and citation omitted).  Here, the evidence is sufficient to meet this evidentiary standard.  Kock sought tax refunds even though there was no record that the IRS withheld money from the Trust or that the Trust made any tax payments to the IRS.  Given the large amount of the refunds requested and the lack of any evidence that withholding or other payments were made to the IRS, a jury could reasonably conclude that the filing of the refund requests constituted an attempt to mislead the IRS or to create a false impression that the IRS owed Kock refunds.  The false statements on the returns were material because without them, the IRS would not have issued refunds to Kock.  Finally, even though Kock claims any misstatement "would not deceive someone," a reasonable jury could find that Kock's claims did in fact deceive the IRS into issuing refunds.

Kock's claim that his money laundering convictions should be overturned because the prosecutor failed to prove the mail and wire fraud charges is also unavailing.  As discussed above, the evidence presented at trial was sufficient for a reasonable jury to find that Kock committed mail and wire fraud.  Likewise, there was sufficient evidence for a reasonable jury to find that Kock knew the monies he deposited were proceeds of criminal activity.  Kock sought tax refunds despite the undisputed evidence that:  (1) the IRS never withheld any amount of money from the Trust or that the Trust made any payments to give rise to a refund, (2) Kock

Appellate Case: 22-1368    Page: 10    Date Filed: 04/13/2023 Entry ID: 5264816

personally deposited the refund checks, and (3) after depositing the checks in his account, he used the money to make multiple luxury purchases during which he lied to the sales representative about the source of the money.  From this evidence a reasonable jury could find that Kock knew the cashier's checks were proceeds from wire and mail fraud.

Finally, Kock asserts the evidence is insufficient on the concealment count because the prosecutor failed to establish both that the IRS had lawful authority to seize the E63 sedan and that Kock knowingly prevented its seizure.  Evidence in the record supports a finding that the seizure warrant was lawfully issued by a magistrate judge with authority in the district and that Kock was served with the warrant. Seizure was attempted by an IRS agent authorized to make the seizure.  Kock asserts that he did not knowingly prevent the seizure, but questioned the validity of the warrant because it had an incorrect date (the year was written as 3020 rather than 2020).  There is evidence in the record that shows otherwise: a reasonable jury could find that Kock knowingly took action to prevent the IRS from seizing the vehicle, based on the IRS agent's testimony that Kock stated he "hid" it.

In sum, the evidence presented at trial was sufficient to sustain the jury's verdicts on all counts.

### C. Evidentiary Ruling and Jury Instructions

We review the district court's evidentiary rulings for an abuse of discretion. United States v. Wright, 993 F.3d 1054, 1061 (8th Cir. 2021).  A challenge to a jury instruction is also reviewed for an abuse of discretion.  Stanley, 891 F.3d at 739.

Kock believes a victim's diligence is relevant in determining whether a misrepresentation has been made and contends the district court erred by excluding evidence of the IRS's lack of diligence in reviewing the filings made by Kock.  He also claims that the court erroneously compounded this error when it provided the jury the following instruction: "It is not relevant, and not a defense, that the Internal

-11-

Appellate Case: 22-1368    Page: 11    Date Filed: 04/13/2023 Entry ID: 5264816

Revenue Service failed to detect the fraudulent nature of the scheme, nor is it relevant that the Internal Revenue Service might have acted with greater diligence." Kock claims this instruction is inconsistent with the court's other instruction that the scheme to defraud must include some sort of fraudulent representation or promise reasonably calculated to deceive a reasonable person. Kock further claims we have recognized that the government is required to show that "the accused intended to defraud his victim and that his or her communications were reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Louper-Morris, 672 F.3d 539, 556 (8th Cir. 2012).

We agree with several of our sister circuits which have held that a fraud victim's negligence is not a defense to criminal charges under the federal fraud statutes. See, e.g., United States v. Lindsey, 850 F.3d 1009, 1014-15 (9th Cir. 2017); United States v. Svete, 556 F.3d 1157, 1165 (11th Cir. 2009) (en banc); United States v. Colton, 231 F.3d 890, 903 (4th Cir. 2000); United States v. Allen, 201 F.3d 163, 167 (2d Cir. 2000) (per curiam); United States v. Coyle, 63 F.3d 1239, 1244 (3d Cir. 1995); United States v. Kreimer, 609 F.2d 126, 132 (5th Cir. 1980). The "ordinary prudence" standard that Kock raises focuses on the defendant, not the victim. To hold otherwise would invite "con men to prey on people of below-average judgment or intelligence, who are anyway the biggest targets of such criminals and hence the people most needful of the law's protection." United States v. Thomas, 377 F.3d 232, 244 (2d Cir. 2004) (citation omitted). Because the IRS's diligence is immaterial in this prosecution, the court did not abuse its discretion in refusing to admit the proffered evidence or in the jury instructions.

### D. Obstruction of Justice Enhancement

Kock challenges the district court's adjustment of his offense level for obstruction of justice. The obstruction of justice guideline provides for a two-level upward adjustment "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1. The district

-12-

court applied this enhancement, finding that Kock concealed the E63 sedan to further Kock's ultimate criminal objective of unlawfully maintaining the assets that he fraudulently received from the IRS.

A district court has broad discretion to apply the obstruction of justice provision of U.S.S.G. § 3C1.1. United States v. Shinder, 8 F.3d 633, 635 (8th Cir. 1993). When a defendant is convicted of both an obstruction offense and an underlying offense, the former is grouped with the latter. U.S.S.G. § 3C1.1 cmt n.8. We review *de novo* the determination that § 3C1.1 applies to specific conduct and review the court's factual findings for clear error. United States v. Hare, 49 F.3d 447, 453 (8th Cir. 1995).

Kock purchased the E63 sedan with fraudulently obtained refunds from the IRS and by his own admission hid the vehicle when IRS agents attempted to seize it pursuant to a facially valid warrant. The record supports the district court's factual findings that the car was hidden in an attempt to maintain the proceeds he obtained as a result of the false tax returns. The district court did not clearly err in finding that Kock hid the car in a vain attempt to secret away some of his ill-gotten gains. Given that the concealment-of-asset count "involve[d] the same victim" as his other offenses, it was correctly grouped with the other counts. U.S.S.G. § 3D1.2 (defining closely related counts). Kock's self-serving statement that he was merely concerned about the date on the warrant does not make the court's determination an error. The court's findings support application of an obstruction of justice enhancement.

### E. Cross-Appeal

The United States cross appeals, arguing the district court erred by failing to impose the costs of prosecution in light of Kock's convictions for failing to file tax returns. 26 U.S.C. § 7203 states that anyone convicted of failing to file a tax return "shall . . . be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 . . . or imprisoned not more than 1 year, or both, together with the costs of prosecution." Kock contends the costs should not be imposed because

-13-

there was no verification of costs to support an award and Kock lacks the ability to pay. Because this is an issue of statutory interpretation, we review *de novo*. United States v. Zaic, 744 F.3d 1040, 1042 (8th Cir. 2014).

In United States v. Wyman, this Court determined that upon conviction for failure to file a tax return, the trial court "does not have discretion to fail to award costs." 724 F.2d 684, 688 (8th Cir. 1984). A few years later, we reaffirmed that costs of prosecution are mandatory. United States v. May, 67 F.3d 706, 707 (8th Cir. 1995) ("Costs of prosecution must be included in the punishment imposed for a violation of 26 U.S.C. § 7203."). But the May Court stated that § 7203 "treats costs of prosecution as a fine, and a defendant's ability to pay must be considered in determining the amount of a criminal fine." Id. at 708. And in United States v. Tindall, an unpublished opinion, the Court determined that May required the district court to consider a defendant's ability to pay in assessing the costs of prosecution. 221 F.3d 1345 (8th Cir. 2000) (unpublished table decision). The government asserts that May is incorrect under Wyman and United States v. Hiland, 909 F.2d 1114, 1141 (8th Cir. 1990), in which we distinguished the costs of prosecution from fines. See Hiland, 909 F.2d at 1141 (stating "§ 1918(b) permits the court to assess costs of prosecution in addition to the maximum fine permitted by the statute, even if that statute does not specifically provide for such an assessment").

Under our prior panel rule, Wyman, which held that costs of prosecution are mandatory, and Hiland, which distinguished costs of prosecution from fines, are controlling. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011). Because we are bound by the prior panel rule, the district court erred in failing to award costs of prosecution.

Kock's other argument that the district court properly refused to award costs based on the lack of a verified bill of costs is unavailing. Section 7203 must be read in conjunction with 28 U.S.C. § 1920, which lists the expenses that may be taxed as costs in both civil and criminal cases. Hiland, 909 F.2d at 1142. Section 1920 states that "[a] bill of costs shall be filed in the case." Section 1924 also requires cost items

Appellate Case: 22-1368    Page: 14    Date Filed: 04/13/2023 Entry ID: 5264816

to be verified by affidavit.  28 U.S.C. § 1924.  While this language is mandatory, there is no provision setting forth the timing for submission.  Hiland, 909 F.2d at 1142.

Though Kock contends the government missed its chance to recover costs of prosecution because it failed to file a verified bill of costs, the plain language of the statutes is silent as to the time limit for submitting a verified bill of costs.  This Court has previously remanded a district court's assessment of costs of prosecution for redetermination because the government did not file a verified bill of costs.  See id. (remanding for "redetermination of taxable costs" where the government failed to file a verified bill of costs).  On the other hand, in Reece v. Bank of New York Mellon, the Court refused to allow a defendant in a civil case to cure his failure to file a bill of costs on remand "because any affidavit verifying the bill of costs now would be unreasonable—well over a year late—and thus untimely."  760 F.3d 771, 779 n.8 (8th Cir. 2014).  Then, in Barcomb v. General Motors LLC, our Court allowed the defendant to cure its failure to submit a bill of costs, noting, Reece held "that it is error to award costs when counsel never complies with the affidavit requirement.  The statute only requires that an affidavit be filed before any bill of costs is taxed."  978 F.3d 545, 550 (8th Cir. 2020) (cleaned up).  The government argues in this case that we should remand because, like in Barcomb, no costs have yet been taxed, and an affidavit can be filed as part of the proceedings on remand.

We see no reason not to exercise the remedy from Hiland and Barcomb under the circumstances of this case.  Our decision is limited to the facts before us and should not be interpreted as deciding a broader issue, not implicated here, of whether it is permissible for the government to file a verified bill of costs at any time following a guilty verdict.  On remand, the government shall submit a verified bill of costs for the district court to consider.

-15-

-16-

## III.   CONCLUSION

For the foregoing reasons, we affirm Kock's convictions.  We vacate the judgment and remand so that the district court may determine taxable costs in accordance with this opinion.

———————————————